# Case No. 24-13543

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## *for the*

# 𝔈𝔩𝔢𝔳𝔢𝔫𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

STEVEN W. HERNANDEZ and DAVID DRWENCKE,
On behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants,*

— v. —

FLORIDA BOARD OF BAR EXAMINERS and MICHELE A GAVAGNI,
Executive Director of the Florida Board of Bar Examiners
in both her individual and official capacity as such,

*Defendants/Appellees.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
CASE NO: 4:21-cv-00247-AW-MAF
(Hon. Allen C. Winsor)

# RESPONSE BRIEF OF APPELLEES

JAMES J. DEAN, ESQ.
NICHOLAS R. CLEARY, ESQ.
MESSER CAPARELLO, P.A.
2618 Centennial Place
Tallahassee, Florida 32308
(850) 222-0720
(850) 224-4359 (Fax)
jdean@lawfla.com
ncleary@lawfla.com

*Counsel for Appellees*

CP COUNSEL PRESS    (800) 4-APPEAL • [811990]

*Steven Hernandez, et al v. Florida Board of Bar Examiners, et al*
Case No. 24-13543

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Appellees Florida Board of Bar Examiners and Michele A. Gavagni submit

their Certificate of Interested Persons and Corporate Disclosure Statement, as

follows:

Appollo Law, LLC

Almon, James T.

Cleary, Nicholas R.

Dean, James J.

Debenedictis, Michael

Drwencke, David

Florida Board of Bar Examiners

Florida Supreme Court

Freeman, Emma

Gavagni, Michele A.

Hansen, Adam W.

Hernandez, Steven W.

McNeely, Robert A.

Messer Caparello, P.A.

Pafford, William

*Steven Hernandez, et al v. Florida Board of Bar Examiners, et al*
Case No. 24-13543

Parasidis, Efthimios

Winsor, Allen

Counsel for Appellees certify that counsel is not aware of any publicly traded company or corporation that has an interest in the outcome of the case or appeal.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellees do not request oral argument. Oral argument is not necessary in this case because the facts and legal issues are narrow and simple. Oral argument is unlikely to add to this Court's ability to resolve them.

**TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF AUTHORITIES ..................................................................................v

STATEMENT OF THE ISSUES...........................................................................1

STATEMENT OF THE CASE...............................................................................2

I.      Nature of the Case .....................................................................................2

II.     Proceedings and Dispositions in the District Court...................................2

III.    Statement of Facts......................................................................................5

    A.      The Board and Gavagni....................................................................6

    B.      Claim of Facial Discrimination .......................................................9

        1.      Law Student Application Fees.................................................9

        2.      Attorney Application Fees .....................................................10

    C.      Claim of Discriminatory Effects ....................................................11

        1.      Florida Supreme Court's Adoption of Rule 2-23.4 in 1996 ........................................................................................11

        2.      Florida Supreme Court's Adoption of Fee Increase in 2010.......................................................................................12

        3.      No Protectionist Motive for Rule 2-23.4 ..................................13

        4.      Experienced Attorney Applicants Continued to Apply To The Florida Bar after Adoption of Rule 2-23.4...................14

        5.      Same Costs Imposed on Similarly-Situated In-State and Out-of-State Applicants ........................................................15

            a)      Florida Residents Pay the Rule 2-23.4 Application Fee............................................................15

            b)      Many Attorneys pay the $1,000 Application Fee..........15

        c)    Law Students and Experienced Attorneys are Not Similarly Situated ....................................................16

   6.    Early Registration Discounts For Law Students Are Critical....................................................................................17

SUMMARY OF THE ARGUMENT ................................................19

STANDARD OF REVIEW ...............................................................22

ARGUMENT ....................................................................................23

I.    Rule 2-23.4 Does Not Violate the Dormant Commerce Clause .................23

   A.    Rule 2-23.4 Does Not Facially Discriminate Against Interstate Commerce.......................................................25

       1.    Proper Comparators are Resident Applicants and Non-Resident Applicants ....................................25

       2.    *Oregon Waste* and *Kuhnlein* are Inapposite .............................29

   B.    Rule 2-23.4 Does Not Discriminate Against Interstate Commerce in Practical Effect .........................................33

       1.    Appellant is Foreclosed From Arguing that Rule 2-23.4 Discriminates Based on Residency...............................33

       2.    Incorporation of Facial Discrimination Claim Does Not Show Discriminatory Effects....................................34

       3.    Applying *Locke* factors, Rule 2-23.4 Does Not Discriminate in Practical Effect ...................................35

           a)    Rule 2-23.4 Does Not Exclude Out-of-State Residents........................................................35

           b)    Rule 2-23.4 Does Not Impose Costs on Out-of-State Residents that In-State Residents Do Not Have to Pay.................................................36

           c)    No Protectionist Purpose for Rule 2-23.4......................42

       4.    Disputed Issues of Fact About Legitimate Local Purpose and Absence of Alternatives Preclude Summary Judgment for Appellant..............................43

iii

5.    Disputed Issues of Fact about Standing Preclude Summary Judgment for Appellant ..............................................43

II.    The Board and Gavagni are Entitled to Eleventh Amendment Immunity...........................................................................................43

    A.    The Board is Entitled to Eleventh Amendment Immunity Because it is an Official Arm of the Florida Supreme Court.............44

    B.    *Manders* Analysis Supports Eleventh Amendment Immunity ..........45

        1.    State Law Defines the Board as an Arm of the Florida Supreme Court ...........................................................................45

        2.    Florida Supreme Court Maintains Control of the Board .........47

        3.    State Law Requires the Board to Supply its Funds ................48

        4.    Any Judgment Against the Board Would Implicate State Funds ........................................................................49

III.    Gavagni is Not Subject to Suit in Her Personal Capacity ............................52

    A.    Qualified Immunity .....................................................................52

    B.    Additional Grounds for Dismissal ......................................................53

        1.    Failure to State a Claim..............................................................53

        2.    Legislative Immunity ................................................................54

        3.    Quasi-Judicial Immunity............................................................55

CONCLUSION.......................................................................................................56

CERTIFICATE OF COMPLIANCE.......................................................................57

CERTIFICATE OF SERVICE ...............................................................................58

ADDENDUM

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*,
  405 F.3d 1298 (11th Cir. 2005) ...................................................51

*Am. Trucking Associations, Inc. v. Rhode Island Tpk. & Bridge Auth.*,
  123 F.4th 27 (1st Cir. 2024)........................................................24

*Arrington v. Miami Dade Cnty. Pub. Sch. Dist.*,
  835 F. App'x 418 (11th Cir. 2020) ..............................................22

*Baez v. Specialized Loan Servicing, LLC*,
  709 F. App'x 979 (11th Cir. 2017) ..............................................34

*Bainbridge v. Turner*,
  311 F.3d 1104 (11th Cir. 2002) ..................................................43

*Bischoff v. Osceola Cnty., Fla.*,
  222 F.3d 874 (11th Cir. 2000) ....................................................43

*Brown v. Bowman*,
  668 F.3d 437 (7th Cir. 2012) ......................................................55

*Brown v. Citizens Property Ins. Corp.*,
  845 F. App'x 860 (11th Cir. 2021) ..............................................51

*Brown–Forman Distillers Corp. v. N.Y. Liquor Auth.*,
  476 U.S. 573 (1986)....................................................................28

*Bullock v. Paris*,
  2024 WL 4717950 (11th Cir. 2024) ............................................55

*Carroll v. Gross*,
  984 F.2d 392 (11th Cir. 1993) ....................................................55

*Chemical Waste Management, Inc. v. Hunt*,
  504 U.S. 334 (1992)....................................................................34

*Cichowski v. Totten*,
  2024 WL 2182487 (11th Cir. 2024) .....................................44, 45

v

*Collins v. Daniels*,
  2017 WL 11441859 (D.N.M. 2017), *aff'd*,
  916 F.3d 1302 (10th Cir. 2019) ...........................................................56

*Conway v. Taylor's Ex'r*,
  66 U.S. 603 (1861)................................................................................24

*CTS Corp. v. Dynamics Corp. of Am.*,
  481 U.S. 69 (1987)................................................................................39

*Cullough v. Finley*,
  907 F.3d 1324 (11th Cir. 2018) ...........................................................47

*Cunningham v. Fulton Cnty.*,
  785 F. App'x 798 (11th Cir. 2019) .........................................................5

*Dale v. Moore*,
  121 F.3d 624 (11th Cir. 1997) .............................................................55

*Day v. Henry*,
  2025 WL 679808 (9th Cir. 2025) ........................................................24

*Dep't of Revenue of Ky. v. Davis*,
  553 U.S. 328 (2008)........................................................................24, 38

*Department of Revenue v. Kuhnlein*,
  646 So. 2d 717 (Fla. 1994) ............................................................29, 30

*Dubuc v. Michigan Bd. of L. Exam'rs*,
  342 F.3d 610 (6th Cir. 2003) ...............................................................45

*Echols v. Lawton*,
  913 F.3d 1313 (11th Cir. 2019) ...........................................................23

*Exxon Corp. v. Governor of Md.*,
  437 U.S 117 (1978)...............................................................................39

*Feliciano v. Tribunal Supreme De Puerto Rico*,
  78 F. Supp. 2d 4 (D.P.R. 1999)...........................................................54

*Fla. Bd. of Bar Exam'rs re: Amendment of Rules of Supreme Court*
  *Relating to Admissions to the Bar*,
  645 So. 2d 972 (Fla. 1994) ..................................................................12

*Fla. Bd. of Bar Exam'rs re Amendments to the Rules of Supreme Court*
  *Relating to Admissions to Bar*,
  676 So. 2d 372 (Fla. 1996) .......................................................11, 12, 13

*Fla. Bd. of Bar Exam'rs re: Applicant*,
  443 So. 2d 71 (Fla. 1983) ...................................................................44

*Fla. Bd. of Bar Exam'rs re Groot*,
  365 So. 2d 164 (Fla. 1978) .................................................................45

*Fla. Bd. of Bar Exam'rs v. G. W. L.*,
  364 So. 2d 454 (Fla. 1978) ...................................................... 44-45, 50

*Florida Bar re Advisory Opinion—Out-of-State Attorney Working
  Remotely from Florida Home*,
  318 So. 3d 538 (Fla. 2022) .................................................................31

*Flynt v. Bonta*,
  2025 WL 815194 (9th Cir. 2025) .........................................................36

*Ford Motor Co. v. Texas Dep't of Transp.*,
  264 F.3d 493 (5th Cir. 2001) ........................................................30, 38

*Fouche v. Jekyll Island-State Park Auth.*,
  713 F.2d 1518 (11th Cir. 1983) .....................................................49, 50

*Gaines v. Wardynski*,
  871 F.3d 1203 (11th Cir. 2017) ..........................................................52

*Garber v. Menendez*,
  888 F.3d 839 (6th Cir. 2018) ..............................................................36

*Gen. Motors Corp. v. Tracy*,
  519 U.S. 278 (1997) .....................................................................24, 38

*Gravel v. United States*,
  408 U.S. 606 (1972) ...........................................................................54

*H&R Block E. Enters., Inc. v. Morris*,
  606 F.3d 1285 (11th Cir. 2010) ..........................................................22

*Harden v. Adams*,
  760 F.2d 1158 (11th Cir. 1985) ..........................................................49

*Harned v. Fulton Cnty. Clerk of Court's Off.*,
  2024 WL 4050561 (11th Cir. 2024) ....................................................56

*Higdon v. Tusan*,
  746 F. App'x 805 (11th Cir. 2018) ......................................................55

*Iglesias v. Pernod Richard*,
  2022 WL 1815846 (11th Cir. 2022) .................................................34

*In re Amendments to Rules of Supreme Court Relating to Admissions
  to the Bar*,
  52 So. 3d 652 (Fla. 2010) ..................................................12

*In re Amendments to Rules of Supreme Court Relating to Admissions
  to the Bar*,
  166 So. 3d 178 (Fla. 2015) ..................................................12

*In re Amendments to Rules of the Supreme Court Relating to Admissions
  to the Bar*,
  54 So. 3d 460 (Fla. 2011) ..............................................12, 13

*In re Fla. Bd. of Bar Exam'rs*,
  353 So.2d 98 (Fla. 1977) ...............................................44, 48

*In re Fla. Bd. of Bar Exam'rs re Amendment to Rules of Supreme Court of
  Fla. Relating to Admissions to Bar*,
  524 So. 2d 643 (Fla. 1988) ............................................17, 18

*Int'l Truck and Engine Corp. v. Bray*,
  372 F.3d 717 (5th Cir. 2004) ...............................................41

*Jackson v. Dep't of Transp.*,
  16 F.3d 1573 (11th Cir. 1994) ..............................................51

*Jagnandan v. Giles*,
  538 F.2d 1166 (5th Cir. 1976) ..............................................49

*Jenkins v. Clerk of Ct., U.S. Dist. Ct., S. Dist. of Fla.*,
  150 F. App'x 988 (11th Cir. 2005) ..........................................55

*Julien v. Comm. of Bar Exam'rs for Practice of Law*,
  923 F. Supp. 707 (D. V.I. 1996) ............................................54

*Kaimowitz v. Fla. Bar*,
  996 F.2d 1151 (11th Cir. 1993), *cert. denied,* 145 S. Ct. 418 (2024) .................44

*Kirkpatrick v. Shaw*,
  70 F.3d 100 (11th Cir. 1995) ...............................................42

*Lake v. Skelton*,
  840 F.3d 1334 (11th Cir. 2016) .........................................47, 51

*Lawrence v. Welch*,
  531 F.3d 364 (6th Cir. 2008) ................................................................55

*Leclerc v. Webb*,
  270 F. Supp. 2d 779 (E.D. La. 2003) ....................................................54

*LensCrafters, Inc. v. Robinson*,
  403 F.3d 798 (6th Cir. 2005) ................................................................41

*Locke v. Shore*,
  634 F.3d 1185 (11th Cir. 2011) .........................................20, 25, 36, 42

*Lowery v. AmGuard Ins. Co.*,
  90 F.4th 1098 (11th Cir. 2024) .............................................................23

*Manders v. Lee*,
  338 F.3d 1304 (11th Cir. 2003) ......................... 44, 45, 46, 47, 48, 49, 51

*McFarland v. Folsom*,
  854 F. Supp. 862 (M.D. Ala. 1994) ......................................................54

*Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*,
  226 F.3d 1226 (11th Cir. 2000) ............................................................50

*Monroe v. Fort Valley State Univ.*,
  93 F.4th 1269 (11th Cir. 2024) .......................................................45, 47

*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*,
  567 F.3d 521 (9th Cir. 2009) ................................................................38

*Nat'l Pork Producers Council v. Ross*,
  598 U.S. 356 (2023) ...............................................................23, 24, 42

*National Association for the Advancement of Multijurisdiction Practice v. Berch*,
  773 F.3d 1037 (9th Cir. 2014) ........................................................26, 27

*National Association for the Advancement of Multijurisdiction Practice v. Castille*,
  799 F.3d 216 (3d Cir. 2015) ...........................................................27, 29

*New York Pet Welfare Association, Inc. v. City of New York*,
  850 F.3d 79 (2d Cir. 2017) ...................................................................40

*Ofori v. Williams*,
  2021 WL 3737706 (E.D. Va. 2021), *aff'd*,
  2022 WL 2989956 (4th Cir. 2022) .......................................................56

*Oregon Waste Systems, Inc. v.*
  *Department of Environmental Quality of Oregon*,
  511 U.S. 93 (1994)...........................................................20, 30

*Ounjian v. Globoforce, Inc.*,
  89 F.4th 852 (11th Cir. 2023) ...............................................22

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
  297 F.3d 1182 (11th Cir. 2002) .............................................22

*Page v. Hicks*,
  773 F. App'x 514 (11th Cir. 2019) .........................................23

*Pellitteri v. Prine*,
  776 F.3d 777 (11th Cir. 2015) ...............................................51

*Ramos v. Tomasino*,
  701 F. App'x 798 (11th Cir. 2017) .........................................45

*Regan v. City of Hammond*,
  934 F.3d 700 (7th Cir. 2019) ...........................................36, 38

*Roland v. E.W. Phillips*,
  19 F.3d 552 (11th Cir. 1994) .................................................55

*Ross v. Jefferson Cty. Dept. of Health*,
  701 F.3d 655 (11th Cir. 2012) .........................................46, 47, 48, 51

*Roy v. Ivy*,
  53 F.4th 1338 (11th Cir. 2022) ..............................................22

*Sapuppo v. Allstate Floridian Ins. Co.*,
  739 F.3d 678 (11th Cir. 2014) .................................................5

*Scariano v. Justs. of the Supreme Ct. of the State of Ind.*,
  38 F.3d 920 (7th Cir. 1994) ...................................................28

*Sea Servs. of the Keys, Inc. v. State of Fla.*,
  156 F.3d 1151 (11th Cir. 1998) .............................................51

*Sestric v. Clark*,
  765 F.2d 655 (7th Cir. 1985) .................................................28

*Smith v. Deal*,
  760 F. App'x 972 (11th Cir. 2019) .........................................53

*Smith v. Lomax*,
    45 F.3d 402 (11th Cir. 1995) ................................................................54

*Sparks v. Character and Fitness Comm. of Ky.*,
    859 F.2d 428 (6th Cir. 1988), *cert. denied*, 489 U.S. 1011 (1989)......................55

*Stoddard v. Fla. Bd. of Bar Exam'rs*,
    229 F. App'x 911 (11th Cir. 2007), *aff'g*,
    509 F. Supp. 2d 1117 (N.D. Fla. 2006) .................................................45

*Supreme Ct. of Va. v. Consumers Union of the United States*,
    446 U.S. 719 (1980).............................................................................54

*Telasco v. Fla. Bar*,
    853 F. App'x 608 (11th Cir. 2021) ........................................................44

*Thai Meditation Ass'n of Ala., Inc. v. City of Mobile*,
    83 F.4th 922 (11th Cir. 2023) ...............................................................23

*Thomas v. Cooper Lighting, Inc.*,
    506 F.3d 1361 (11th Cir. 2007) ............................................................53

*Tolchin v. Supreme Court of the State of New Jersey*,
    111 F.3d 1099 (3d Cir. 1997) .........................................................27, 28

*Travelers Indem. Co. v. Sch. Bd. of Dade Cnty., Fla.*,
    666 F.2d 505 (11th Cir. 1982) ..............................................................51

*Truesdell v. Friedlander*,
    80 F.4th 762 (6th Cir. 2023) .................................................................41

*Uberoi v. Supreme Court of Fla.*,
    819 F.3d 1311 (11th Cir. 2016) ............................................................44

*United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*,
    550 U.S. 330 (2007)..............................................................................24

*Versiglio v. Bd. of Dental Exam'rs of Ala.*,
    686 F.3d 1290 (11th Cir. 2012) ......................................................45, 46

*Virgin Islands. Am. Resort Dev. Ass'n v. Gov't of Virgin Islands*,
    848 F. App'x 79 (3d Cir. 2021) ............................................................40

*Williams v. Dist. Bd. of Trs. of Edison Cmty. Coll.*,
    421 F.3d 1190 (11th Cir. 2005) ............................................................49

*Wyoming v. Oklahoma*,
  502 U.S. 437 (1992)..................................................................................34

*Yerger v. Mass. Tpk. Auth.*,
  395 F. App'x 878 (3d Cir. 2010) ...........................................................31

*Young v. Grand Canyon Univ., Inc.*,
  980 F.3d 814 (11th Cir. 2020) ...............................................................53

## Statutes and Other Authorities:

U.S. Const., Amend. XI ....................................... 1, 5, 21, 23, 43, 44, 45, 46, 49, 51

Fed. R. Civ. P. 12(b)(6)...............................................................................5

Fed. R. Civ. P. 56 ........................................................................................5

Fla. Bar Admiss. R. 1-11 ...........................................................................55

Fla. Bar Admiss. R. 1-12 ..................................................................... 11-12

Fla. Bar Admiss. R. 1-14 .............................................................................8

Fla. Bar Admiss. R. 1-22 .............................................................................6

Fla. Bar Admiss. R. 1-23 .............................................................................6

Fla. Bar Admiss. R. 1-51 ...........................................................................48

Fla. Bar Admiss. R. 1-51.2 ........................................................................48

Fla. Bar Admiss. R. 1-52 ...........................................................................48

Fla. Bar Admiss. R. 1-53 .....................................................................6, 7, 48

Fla. Bar Admiss. R. 1-71 ...........................................................................46

Fla. Bar Admiss. R. 2-20 ......................................................................10, 11

Fla. Bar Admiss. R. 2-23 ...........................................................9, 28, 47, 50

Fla. Bar Admiss. R. 2-23.1 .....................................................................9, 15

Fla. Bar Admiss. R. 2-23.1(b)...................................................................10

Fla. Bar Admiss. R. 2-23.2 .......................................................................15

Fla. Bar Admiss. R. 2-23.3 .....................................................................9, 15

Fla. Bar Admiss. R. 2-23.3(a)...................................................................10

Fla. Bar Admiss. R. 2-23.4 .............. 1, 2, 3, 4, 10, 11, 13, 14, 15, 19, 20, 21, 23, 25, 26, 29, 30, 31, 32, 33, 34, 35, 36, 39, 42, 52, 55

Fla. Bar Admiss. R. 2-23.6 ............................................................11

Fla. Bar Admiss. R. 3-10 ..................................................................8

Fla. Bar Admiss. R. 3-10.1 ...............................................................8

Fla. Bar Admiss. R. 3-11 ..................................................................8

Fla. Bar Admiss. R. 3-17 .................................................................48

Fla. Bar Admiss. R. 3-21 ..................................................................8

Fla. Bar Admiss. R. 3-22 ..................................................................8

Fla. Bar Admiss. R. 3-22.5 ...............................................................8

Fla. Bar Admiss. R. 3-23 ...........................................................8, 9, 17

Fla. Bar Admiss. R. 3-23.2 ...........................................................8, 17

Fla. Bar Admiss. R. 3-23.6 ...............................................................9

Fla. Bar Admiss. R. 3-23.7 ...............................................................9

Fla. Bar Admiss. R. 3-40.1 ...............................................................9

Fla. Bar Admiss. R. 4 ........................................................................8

Fla. Const. art. V, § 15 .......................................................6, 44, 48, 55

Fla. R. Jud. Amin. 2.440(a)(1) .......................................................46

R. Regulating Fla. Bar 1-7.3 ..........................................................49

## <u>STATEMENT OF THE ISSUES</u>

Appellees submit the following more accurately, and neutrally, states the issues on appeal:

1. Whether the District Court correctly dismissed Appellants' dormant Commerce Clause claim that Bar Admission Rule 2-23.4 facially discriminates against interstate commerce for failure to state a claim?

2. Whether the District Court correctly denied Appellant Drwencke's motion for summary judgment on his dormant Commerce Clause claim that Bar Admission Rule 2-23.4 discriminates against interstate commerce in practical effect?

3. Whether the District Court correctly dismissed Appellant Hernandez's dormant Commerce Clause claim for monetary relief against the Florida Board of Bar Examiners and its Executive Director in her official capacity based on Eleventh Amendment immunity?

4. Whether the District Court correctly dismissed Appellant Hernandez's dormant Commerce Clause claim for monetary relief against the Board's Executive Director in her personal capacity based on qualified immunity?

## **STATEMENT OF THE CASE**

Appellants' Statement of the Case includes argument, omits relevant facts, and includes statements that do not accurately reflect the record. The Florida Board of Bar Examiners ("Board") and Michele A. Gavagni ("Gavagni") thus provide their own Statement of the Case.

### **I.   Nature of the Case**

This is a putative class action challenging the constitutionality of Rule 2-23.4 of the Rules of the Supreme Court Relating to Admissions to the Bar ("Bar Admission Rules") which establishes the application fee to be paid by experienced attorney applicants to The Florida Bar.

### **II.   Proceedings and Dispositions in the District Court**

The Plaintiffs-Appellants, Steven W. Hernandez ("Hernandez") and David Drwencke ("Drwencke") are attorneys admitted to the bars of other states. ECF No. 41-1 at 9-10, 13. Hernandez applied for admission to The Florida Bar and paid the application fee. ECF No. 41-1 at 14-15. Drwencke has not applied for admission to The Florida Bar, but alleges that he intends to apply and was dissuaded by the amount of the application fee. ECF No. 41-1 at 10-12.

Hernandez filed the initial complaint claiming a violation of the dormant Commerce Clause and other constitutional provisions. ECF No. 1 at 23-42. Hernandez sued the Florida Supreme Court, the Board and Gavagni in her official

2

capacity. ECF No. 1 at 2. Hernandez requested certification of a class and sought monetary, declaratory and injunctive relief. ECF No. 1 at 18-22, 27, 31, 33, 35, 39, 41-42.

The Board and the Florida Supreme Court moved to dismiss Hernandez's complaint on several grounds. ECF No. 9, 10. Hernandez then filed a First Amended Complaint ("FAC") adding Drwencke as an additional plaintiff. ECF No. 14. The FAC also added a claim for damages against Gavagni in her personal capacity. *Id*. Hernandez and Drwencke ("Appellants") later voluntarily dismissed the Florida Supreme Court as a defendant. ECF No. 22, 23.

Ultimately, Appellants filed a Third Amended Complaint alleging that Rule 2-23.4 violated the dormant Commerce Clause because it discriminated against interstate commerce on its face and in practical effect (tier 1 claim) and imposed a burden on interstate commerce that was clearly excessive in relation to the putative local benefits (tier 2 claim). ECF No. 46.

The District Court, Honorable Allen Winsor, held that Hernandez lacked standing to seek declaratory or injunctive relief because he had already paid the application fee and that Hernandez could not recover damages because the Board had Eleventh Immunity and Gavagni had qualified immunity. ECF No. 40; ECF No. 45. Regarding the merits, Judge Winsor dismissed Appellants' dormant Commerce Clause claim of facial discrimination for failure to state a claim,

explaining that Rule 2-23.4 "assess[es] fees based on how long an applicant has *been admitted* to the bar in any jurisdiction other than Florida, but without reference to where the applicant lives or works." ECF No. 45 at 16.

The parties then commenced discovery under a seven-month discovery period. ECF No. 58 (Scheduling Order). Given the dismissal of the claims for monetary relief, the parties also stipulated that the case would proceed on an individual basis, with Appellants reserving their rights to seek class certification at a later date in the event of an appeal. ECF No. 60, 61.

After four months of discovery, each side filed a motion for partial summary judgment on Drwencke's tier 1 claim of discriminatory effects. ECF No. 68, ECF No. 80. Based on the pending summary judgment motions, the parties jointly moved to stay discovery pending disposition of the motions, ECF No. 85, and discovery was stayed. ECF No. 90.

In separate orders, Judge Winsor first denied Drwencke's motion for partial summary judgment on his tier 1 claim. ECF No. 95. Judge Winsor later considered and granted the Board's and Gavagni's motion for partial summary judgment on the tier 1 claim. ECF No. 103. Because Drwencke's tier 2 claim under the *Pike* balancing analysis was still pending, Judge Winsor directed that it be set for trial within six months. ECF No. 103 at 11. Drwencke then stipulated to the dismissal

of his tier 2 claim, ECF No. 107, 108, and Judge Winsor entered a Final Judgment, ECF No. 109.

Hernandez and Drwencke appeal from Judge Winsor's dismissal of their tier 1 claim of facial discrimination, and Drwencke appeals from the denial of summary judgment on his tier 1 claim of discriminatory effects.[1] Hernandez also appeals from Judge Winsor's rulings that the Board is entitled to Eleventh Amendment immunity and that Gavagni is entitled to qualified immunity in her personal capacity.

### III.  Statement of Facts

Because this appeal involves an order of dismissal under Fed. R. Civ. P. 12(b)(6) and an order denying summary judgment under Fed R. Civ. P. 56, Appellees first set forth facts regarding the Board and then provide a separate section of facts regarding the claims addressed in each order on appeal.

---

[1] Appellants do not challenge the District Court's order granting partial summary judgment for Appellees. ECF No. 103. Appellants make passing reference to that ruling in their Statement of the Case, *see* I.B. at 18, but they do not include it as an issue in their Statement of the Issues, *id*. at 17, or mention it in their Summary of the Argument, Argument, or Conclusion sections. Thus, Appellants have abandoned any claim regarding that ruling, and it is not part of this appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680-81 (11th Cir. 2014) (appellants abandoned issues not identified in their statement of the issues or adequately addressed in remainder of their initial brief); *Cunningham v. Fulton Cnty.,* 785 F. App'x 798, 805 (11th Cir. 2019) (affirming ruling granting appellee's motion for sanctions, but not addressing ruling denying appellants' cross motion for sanctions because appellants did not make argument on that ruling in their brief).

A. **The Board and Gavagni**

The Florida Supreme Court has "exclusive jurisdiction to regulate the admission of persons to the practice of law." ECF No. 37 at 8 (citing Fla. Const. art. V, § 15). The Bar Admission Rules govern the bar admissions process in Florida. ECF No. 46 at 20; ECF No. 88-3 at 1. The Bar Admission Rules are "reviewed, approved, and promulgated by" the Florida Supreme Court. ECF No. 23 at 3.

The Florida Supreme Court created the Board to be an "administrative agency of" the Court "to implement the rules relating to bar admission." ECF No. 46 at 7, 20; ECF No. 23 at 3 (citing Fla. Bar Admiss. R. 1-12, 1-13). The Bar Admission Rules establish the qualifications for service on the Board, the duties of Board members, the essential conduct required of Board members and their terms of service. *See* Fla. Bar Admiss. R. 1-22, 1-23. The Rules also establish requirements for the meetings of the Board. *Id*. 1-40.

The Florida Supreme Court appoints the members of the Board, ECF No. 37 at 8 (citing Fla. Bar Admiss. R. 1-22), and designates a liaison Justice for communications with the Board. ECF No. 88-3 at 2.

The Bar Admission Rules provide that the Board "will employ an executive director and other assistants as it may deem necessary." Fla. Bar Admiss. R. 1-53. Gavagni is the current Executive Director, and she has held this position since

6

2006. ECF No. 46 at 8; ECF No. 88-3 at 1. As Executive Director, Gavagni is responsible for ensuring that the Board's operations follow the Bar Admission Rules, including charging the fees set forth in the Rules. ECF No. 88-3 at 1.

The Board also employs staff to fulfill its responsibilities under the Bar Admission Rules. ECF No. 46-1 at 11. The Rules require that the Board "provide for the compensation of employees" and "pay expenses incurred in the performance of their official duties." *See* Fla. Bar Admiss. R. 1-53. The Board's employees participate in the State of Florida Retirement System and the State of Florida health insurance plan. ECF No. 46-1 at 11-12.

The Bar Admission Rules require the Board to submit a proposed budget to the Florida Supreme Court for its approval each year and to also file annual audits with the Court. ECF No. 23 at 31 (citing Fla. Bar Admiss. R. 1-51, 1-52); ECF No. 46-1 (Proposed Budget for 2014-2015); ECF No. 88-4 (Proposed Budget for 2021-2022). The Board holds an annual Policy Session each year, and the Justices of the Court attend the Board's annual Policy Session. ECF No. 88-3 at 2. At the Policy Session, members and employees of the Board discuss issues relating to the Board's operations with the Justices. *Id*. Holding a vote on submission of the Board's budget to the Florida Supreme Court is typically an agenda item at the Policy Session. ECF No. 88-3 at 2.

Under the Bar Admission Rules, in addition to administering the Florida bar exam, the Board must conduct a background investigation on every applicant for admission. ECF No. 46 at 24; ECF No. 23 at 3 (citing Fla. Bar Admiss. R. 1-14, 3-21, 4). The Rules set the standards for that investigation and identify categories of conduct that require investigation because they are potentially disqualifying for admission, such as illegal conduct, neglect of professional obligations, and disciplinary action against practicing lawyers. ECF No. 23 at 3 (citing Fla. Bar Admiss. R. 3-10, 3-10.1, 3-11). The purpose of the character and fitness investigation is to protect the public and safeguard the judicial system. ECF No. 46 at 24 (citing Fla. Bar Admiss. R. 1-14.1).

The Board's investigation starts with the Florida Bar Application, which asks questions about information relevant to the standards for admission. ECF No. 23 at 3. After reviewing the application disclosures, the Board's staff investigates by collecting information and records from outside sources. ECF No. 23 at 3-4 (citing Fla. Bar Admiss. R. 2-22).

The Board's investigation also may include investigative and formal hearings. ECF No. 23 at 4 (citing Fla. Bar Admiss. R. 3-21, 3-22, 22.5, 3-23.2). The formal hearing process involves service of Specifications, which are formal charges alleging the basis for denying the applicant's admission to the Bar. ECF No. 23 at 4 (citing Fla. Bar Admiss. R. 3-23, 3-23.2). After the formal hearing, the

8

Board makes a recommendation on admission, and the applicant can petition the Florida Supreme Court for review. ECF No. 23 at 4 (citing Fla. Bar Admiss. R. 3-23.6, 3-23.7, 3-40.1).

### B. <u>Claim of Facial Discrimination</u>

The Bar Admission Rules establish various fees that must be paid by applicants for admission or readmission to The Florida Bar. ECF No. 46 at 10; ECF No. 23 at 4. All fees are set by order of the Florida Supreme Court and may only be changed by order of the Court. ECF No. 46 at 10; ECF No. 37 at 8 (citing Fla. Bar Admiss. R. 2-23); ECF No. 88-3 at 10.

#### 1. <u>Law Student Application Fees</u>

The application fee for law students depends on whether law students file a student registration in their first year of law school by an early registration deadline. ECF No. 23 at 5. There are two early registration deadlines. ECF No. 23 at 5. For law students who start school in August or September, the first early registration deadline is January 15 of their first year, and the second early registration deadline is March 15 of their first year. *Id.*

Law students who file by the first early registration deadline pay a "discounted early registration" application fee of $700: $100 upon initial registration, plus $600 when they supplement their application in their third year of law school. ECF No. 23 at 5 (citing Fla. Bar Admiss. R. 2-23.1, 2-23.3). Law

students who file by the second early registration deadline pay a "discounted early registration" fee of $950: $350 upon initial registration, plus $600 when supplementing their application in their third year of law school. ECF No. 23 at 5 (citing Fla. Bar Admiss. R. 2-23.1(b), 2-23.3(a)).

Under the Bar Admission Rules, the fee for a law student to apply for admission does not depend on where the student resides. *See* Fla. Bar Admiss. R. 2-20.

2. Attorney Application Fees

Applicants who did not register as law students, and have not been admitted in another jurisdiction for more than one year, pay an application fee of $1,000. ECF No. 23 at 5 (citing Fla. Bar Admiss. R. 2-23.2).

Under Rule 2-23.4, the application fees for attorneys "who have been admitted to the bar in any jurisdiction for a period in excess of 12 months" ("experienced attorney applicants") depend on how long the attorney has been admitted to practice law:

| Time Admitted in Another Jurisdiction | Application Fee |
|---|---|
| More than 1 year, but less than 5 years | $1,600 |
| 5 or more years, but less than 10 years | $2,000 |
| 10 or more years, but less than 15 years | $2,400 |
| More than 15 years | $3,000 |

10

ECF No. 46 at 3, 10; ECF No. 23 at 5-6.[2]

There are different application fees for attorneys who have been disbarred and attorneys who reapply after having previously been denied admission. For applicants "applying for admission after disbarment or resignation pending disciplinary proceedings in Florida or in any other jurisdiction," the fee is $6,000. *See* Fla. Bar Admiss. R. 2-23.6. For applicants who reapply for admission and assert rehabilitation from prior conduct that resulted in denial of admission to The Florida Bar, the fee is $2,200. *Id.* 2-28.

Under the Bar Admission Rules, the fee for an attorney to apply for admission does not depend on where the attorney resides. *See* Fla. Bar Admiss. R. 2-20.

### C. <u>Claim of Discriminatory Effects</u>

#### 1. <u>Florida Supreme Court's Adoption of Rule 2-23.4 in 1996</u>

The Florida Supreme Court adopted the fee structure for experienced attorney applicants in 1996 when it amended the Bar Admission Rules. ECF No. 46-2 at 13; *see also Fla. Bd. of Bar Exam'rs re Amendments to the Rules of Supreme Court Relating to Admissions to Bar*, 676 So. 2d 372, 385 (Fla. 1996).

Modifications to the Bar Admission Rules "require the filing of a petition with the Supreme Court of Florida and subsequent order by the court." *See* Fla. Bar

---

[2] Bar Admission Rule 2-20, including Rule 2-23.4, is set out in an addendum at the end of this brief.

Admiss. R. 1-12; The Florida Supreme Court does not always approve the Board's requests to amend the rules.[3]

The Board proposed several rule changes to the Florida Supreme Court in 1996. The proposed rule changes were first published for comment, and then the Court issued an order relating to the proposed amendments. ECF No. 46-2 at 13; *Amendments*, 676 So. 2d at 385. In its 1996 opinion first adopting the experience-based fee schedule, the Court included the Board's supporting rationales in the appendix to its opinion:

> The progressive assessment of fees is similar to membership dues for the American Bar Association which range from $50.00 (for 1, 2 or 3 years since original bar admission) to $275.00 (for ten years or more since original bar admission).
>
> Furthermore, the cost of the Board's background investigation for out-of-state attorneys often increases in relationship to the number of years such attorneys have been admitted in their respective, foreign jurisdictions.

ECF No. 46-2 at 13-14; *Amendments*, 676 So. 2d at 385.

### 2.  Florida Supreme Court's Adoption of Fee Increase in 2010

The Florida Supreme Court reaffirmed the experience-based fee structure in 2010 when the Court approved an increase to the fee amounts. *See In re*

---

[3] *See, e.g.*, *Fla. Bd. of Bar Exam'rs re: Amendment of Rules of Supreme Court Relating to Admissions to the Bar*, 645 So. 2d 972, 973-74 (Fla. 1994) (declining to adopt Board's proposed rule change); *In re Amendments to Rules of Supreme Court Relating to Admissions to the Bar*, 52 So. 3d 652, 653 (Fla. 2010) (same); *In re Amendments to Rules of Supreme Court Relating to Admissions to Bar*, 166 So. 3d 178, 178-79 (Fla. 2015) (same).

*Amendments to Rules of the Supreme Court Relating to Admissions to the Bar*, 54 So. 3d 460, 461 (Fla. 2011) (revised after rehearing; original opinion made fee increase effective October 1, 2010).

Under the prior version of Rule 2-23.4 that existed from 1996 to 2010, the application fees for experienced attorney applicants ranged from $1,300 to $2,500. ECF No. 46-2 at 13; *Amendments*, 676 So. 2d at 385. In 2010, the Court approved increases to the fee amounts to "generally reflect the average increase in the rate of inflation from 1996 to 2009." *Amendments*, 54 So. 3d at 461. The Court further noted it was appropriate to "pass on the Board's extraordinary investigative costs to the specific applicants whose applications are most likely to incur such costs." *Id.* at 461.

### 3.  No Protectionist Motive for Rule 2-23.4

The Florida Supreme Court has not expressed any protectionist reason for adopting the application fee provisions in Rule 2-23.4. ECF No. 46-2 at 2-4. Likewise, neither the Board nor Gavagni has expressed any protectionist reason for proposing changes to the Bar Admission Rules regarding Rule 2-23.4. ECF No. 46-2 at 13-14; ECF No. 88-3 at 2 and 8-10. The Board and Gavagni deny that there was any protectionist motivation. ECF No. 56 (Answer) at 2-3 (¶¶11 and 14-15) and 28 (¶¶286, 288); ECF No. 68 at 27-29; ECF No. 99 at 11-12.

13

4.  Experienced Attorney Applicants Continued to Apply After Adoption of Rule 2-23.4

The Board has tracked the number of experienced attorney applicants per fiscal year since 1977. ECF No. 69-1 at 1-2, ¶¶ 4-7; ECF No. 69-2. The five fiscal years with the highest number of experienced attorney applicants all occurred after the experienced-based fee schedule was adopted by the Court in 1996. *Id.* Three of those five years were the last three years of available data during the pendency of this case:

| Fiscal Year | Experienced Attorney Applicants |
|:-----------:|:-------------------------------:|
| 2004-05 | 748 |
| 2003-04 | 712 |
| 2020-21 | 691 |
| 2022-23 | 650 |
| 2021-22 | 618 |

*Id.*; ECF No. 88-1 at 1, ¶3.

In every year going back to the adoption of Rule 2-23.4 in 1996, hundreds of experienced attorneys have applied for admission to The Florida Bar. *Id.* And the number of experienced attorney applicants in each of the last three years exceeds the number of such applicants in any year between 1977 and 1996, when the Florida Supreme Court adopted Rule 2-23.4. *Id.*

14

5. <u>The Application Fees Impose the Same Costs on Similarly-Situated In-State and Out-of-State Applicants</u>

The fees to apply to The Florida Bar do not depend on where applicants reside or their geographical work location. ECF No. 69-3 at 4-5. Rule 2-23.4 distinguishes based solely on the length of time someone has been an attorney. *Id.*; ECF No. 88-2 at 7; Fla. Bar Admiss. R. 2-23.4, 2-23.1, 2-23.3.

*a) Florida Residents Pay the Rule 2-23.4 Application Fee*

Approximately 45% of the applicants who have paid the application fee under the current or prior version of Rule 2-23.4 have been residents of Florida. ECF No. 69-3 at 3-4; ECF No. 69-4; ECF No. 72 (flash drive); ECF No. 121. And during the 2022 calendar year, approximately 48% of the applicants who paid the Rule 2-23.4 application fee were residents of Florida. ECF No. 69-3 at 4 (¶15).

*b) Many Attorneys pay the $1,000 Application Fee*

Applicants who have been licensed to practice law in another jurisdiction for less than 1 year pay a $1,000 application fee, just like many law students. ECF No. 69-3 at 4-5; Fla. Bar Admiss. R. 2-23.2. Since the adoption of the current fee schedule in 2010, 2,319 attorney applicants paid the $1,000 fee, and during the 2022 calendar year, 245 attorney applicants paid a $1,000 application fee. *Id.*

15

    *c) Law Students and Experienced Attorneys are Not Similarly Situated*

Experienced attorney applicants pay a higher application fee than law students, but there are differences between law student applicants and experienced attorney applicants. ECF No. 88-2 at 1-5.

Law students are in a different financial situation from experienced lawyers. ECF No. 88-3 at 9, ¶30. Attorney applicants have had a longer opportunity to earn income from practicing law than law students. *Id*. And law students are limited in their ability to earn income from practicing law because they are unlicensed. *Id*.

Law students also differ from experienced attorney applicants with respect to their background investigations. ECF No. 88-2 at 1-5; ECF No. 88-3 at 8-9. Certain attorney-specific issues arise during investigations of experienced attorney applicants that do not arise during investigations of student applicants. ECF No. 88-2 at 1-5. Cases involving attorney grievances, bar discipline, sanctions, legal malpractice suits, and employment misconduct as an attorney almost always require the investigator and other Board employees to work on a Character and Fitness Report for review by a committee of three Board members. *Id.* at 3-5. The same goes for discrepancies between disclosures on the Florida Bar Application and other bar applications. *Id.* at 1-2.

Based on any of those attorney-specific issues, the three Board members reviewing the file may determine that an investigative hearing is necessary, which

requires more Board resources. *Id.* at 3. Investigative hearing panels may require applicants to appear for a formal hearing, which involves the Office of General Counsel preparing a formal charging document and procedures associated with a full due process hearing. *Id. See also* Fla. Bar Admiss. R. 3-23, 3-23.2.

### 6. Early Registration Discounts For Law Students Are Critical

In addition to funding the increased costs of background investigations for experienced attorney applicants, the application fees paid by attorney applicants also enable the Board to continue offering discounted fees to encourage law students to apply by an early registration deadline. ECF No. 88-3 at 9, ¶ 29.

Offering early registration discounts has been a longstanding strategy for managing the Board's investigative workload. ECF No. 88-3 at 3, ¶¶ 11-13. Since the creation of the Board in 1955, law students who registered in their first year have paid a lower application fee than attorney applicants. ECF No. 88-3 at 3, ¶ 12.

In 1988, the Florida Supreme Court adopted the Board's proposed rule change to specifically use the term "discounted" to refer to application fees for early student registrants. *In re Fla. Bd. of Bar Exam'rs re Amendment to Rules of Supreme Court of Fla. Relating to Admissions to Bar*, 524 So. 2d 643, 646 (Fla. 1988). The Court noted that the language would better "highlight to beginning law students the benefits of early registration" and "encourage greater early filing by law students." *Id.* at 646. The Court added: "Such early filing spreads the Board's

17

workload more evenly and assists the Board in the orderly and efficient processing of all bar applications." *Id.*

Early registration discounts for law students are critical for managing the Board's work. *Id.* at 6, ¶ 22. In a typical year, the Board receives applications from more than 3,000 people, and it must conduct a background investigation for all of those applicants. ECF No. 88-2 at 8, ¶ 25; ECF No. 88-3 at 5, ¶ 20 (adding that Florida consistently ranks third or fourth among States for number of bar applicants every year).

The discounts and deadlines for early law student registration spread out the number of applications received by the Board over the course of the year. ECF No. 88-3 at 6, ¶ 22. The Board receives a significant number of applications in the weeks leading up to the January 15 first early registration deadline for most law students. *Id.* The next major wave of applications starts in the weeks leading up to the May 1 initial filing deadline for the July bar exam and continues through the June 15 final deadline for that exam. *Id.* Receiving a significant number of law student registrations in January allows the Board's staff to make progress on the registrants' investigations before non-registrant applicants start applying for the July exam. *Id.*

Discounted fees are the most effective incentive to encourage students to file a Registrant Bar Application in their first year of law school. ECF No. 88-3 at 7-8,

¶ 27. Removing that incentive would lead to considerably more law students waiting until their bar exam filing deadline—after law school graduation—to file their Florida Bar Applications. *Id.* at 5, ¶ 21. Receiving most applications at or around the exam filing deadline would overwhelm the Board's staff, resulting in an investigative backlog and admissions delays for all applicants. ECF No. 88-2 at 8, ¶ 26; ECF No. 88-3 at 5.  Significantly more people would be unable to practice law in Florida even after passing the bar exam because they were awaiting their background investigation clearance. ECF No. 88-3 at 6, ¶ 23.

In contrast, the current use of discounts to incentivize early registration allows the Board to complete a higher percentage of its background investigations before releasing bar exam grades. *Id.* ¶ 24. That higher percentage is a benefit to all applicants, including attorney applicants, who can start practicing law in Florida as soon as they pass the bar exam.  *Id.*

## SUMMARY OF THE ARGUMENT

This case is about whether charging different application fees to law students and experienced attorneys seeking admission to The Florida Bar, regardless of where they reside, violates the dormant Commerce Clause. It does not.

Bar Admission Rule 2-23.4 does not *facially* discriminate against interstate commerce because the application fee is the same for all experienced attorneys regardless of residency. The Rule makes no reference to residency and does not

19

favor resident applicants over non-resident applicants. And Appellants cannot fit their claim into the facts of *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Oregon*, 511 U.S. 93 (1994), because unlike the law in *Oregon Waste*, Rule 2-23.4 does not tax an item of commerce when it crosses state lines. District Judge Winsor thus correctly dismissed the facial discrimination claim.

Bar Admission Rule 2-23.4 also does not discriminate against interstate commerce in *practical effect*. On his motion for summary judgment, Drwencke presented no evidence to show *any* impact on interstate commerce, let alone a *discriminatory* impact. For instance, he presented no evidence to show that the number of experienced attorney applicants who have applied for admission to The Florida Bar since adoption of the Rule has substantially decreased. To the contrary, the summary judgment record shows that hundreds of experienced attorneys have applied since the Rule has been in effect, with some of the highest numbers of applicants being in recent years. And as found by the District Court, nearly half of the experienced attorney applicants who pay the higher fee are residents of Florida.

Further, Drwencke failed to present summary judgment evidence to the District Court to support a finding of discrimination based on the factors identified by this Court in *Locke v. Shore*, 634 F.3d 1185 (11th Cir. 2011). Drwencke argued below that residency of the applicants was immaterial, and he identified no

evidence to show that Rule 2-23.4 excluded any non-residents from the market, or imposed costs on non-resident applicants that residents did not have to pay, or that Rule 2-23.4 was enacted by the Florida Supreme Court with a protectionist purpose.

Drwencke's attempt to obtain a reversal of the denial of his motion for summary judgment on his discriminatory effects claim, by comparing law students with experienced attorneys, also fails. First, Drwencke did not present this argument to the District Court, and thus he may not raise it on appeal. Second, to show that Rule 2-23.4 discriminates, Drwencke must compare similarly-situated applicants. Law students and experienced attorneys are not similarly situated due to numerous substantial differences in their income levels, their work opportunities, their work history, their history of law practice and in the scope of the background investigations that must be conducted by the Board in connection with their applications for admission. Accordingly, Judge Winsor did not err in denying Drwencke's motion for summary judgment.

The monetary claims against the Board were properly dismissed based on Eleventh Amendment immunity because the Florida Supreme Court created the Board as its agent for bar admissions, and the Board is an official arm of, and solely answerable to, the Florida Supreme Court.

21

The monetary claims against Gavagni in her personal capacity were properly dismissed based on qualified immunity because Appellants failed to state a claim for relief against her, and there is no reported case that would give her fair warning that she was violating the law. Gavagni is also entitled to legislative immunity and quasi-judicial immunity.

This Court should, therefore, affirm the District Court.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's grant of a motion to dismiss for failure to state a claim. *Roy v. Ivy*, 53 F.4th 1338, 1351 (11th Cir. 2022). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 857 (11th Cir. 2023). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Arrington v. Miami Dade Cnty. Pub. Sch. Dist.*, 835 F. App'x 418, 420 (11th Cir. 2020) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

This Court reviews *de novo* a district court's denial of a motion for summary judgment, applying the same standards the district court used. *H&R Block E. Enters., Inc. v. Morris*, 606 F.3d 1285, 1290 (11th Cir. 2010). Summary judgment is proper where, "construing all facts in favor of the non-movant, there is no

genuine issue of any material fact and the movant is entitled to judgment as a matter of law." *Thai Meditation Ass'n of Ala., Inc. v. City of Mobile*, 83 F.4th 922, 926 (11th Cir. 2023). The mere filing of cross-motions for summary judgment "'do[es] not automatically empower the court' to enter summary judgment for one party." *Id.* (citation omitted). Instead, "the district court must methodically take each motion in turn and construe all the facts in favor of the non-movant for each," and then, only if "after engaging in this analysis, the district court determines no genuine issue of material fact exists, then it may appropriately enter summary judgment for a party." *Id*.

This Court reviews *de novo* a district court's dismissal of claims based on Eleventh Amendment immunity. *Page v. Hicks*, 773 F. App'x 514, 517 (11th Cir. 2019). This Court also reviews *de novo* a grant of qualified immunity. *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019).

This Court "may affirm on any ground the record supports." *Lowery v. AmGuard Ins. Co.*, 90 F.4th 1098, 1103 (11th Cir. 2024).

## ARGUMENT

### I.  Rule 2-23.4 Does Not Violate the Dormant Commerce Clause

The U.S. Supreme Court, in its most recent Commerce Clause opinion, stated that "extreme caution" is warranted before a court invalidates a state law based on the dormant Commerce Clause. *Nat'l Pork Producers Council v. Ross*,

598 U.S. 356, 390 (2023) (quoting *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 310 (1997)).[4] To emphasize the point, the Court added that relying on the dormant Commerce Clause is a "matter of 'extreme delicacy,' something courts should do only 'where the infraction is clear.'" *See id.* (quoting *Conway v. Taylor's Ex'r*, 66 U.S. 603, 634 (1861)).

To prevail on a tier 1 dormant Commerce Clause discrimination claim, a plaintiff must show differential treatment "of substantially similar entities." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 342 (2008) ("a fundamental element of dormant Commerce Clause jurisprudence [is] the principle that 'any notion of discrimination assumes a comparison of substantially similar entities'"), *citing United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 342 (2007) (*quoting Tracy*, 519 U.S. at 298). This is required for claims of facial discrimination and discriminatory effects. *See, e.g.*, *Tracy*, 519 U.S. at 298 (facial discrimination claim); *Day v. Henry*, 2025 WL 679808, at *5 (9th Cir. 2025) (discriminatory effects claim); *Am. Trucking Associations, Inc. v. Rhode Island Tpk. & Bridge Auth.*, 123 F.4th 27, 40 (1st Cir. 2024) (same).

Appellants acknowledge that in *Pork Producers*, the Supreme Court reiterated that "this antidiscrimination principle lies at the 'very core' of [the

---

[4] A majority of the Justices joined the section of Justice Gorsuch's opinion where this statement appears. *See id.* at 363 (stating that Section V of the opinion reflects the opinion of the Court).

Court's] dormant Commerce Clause jurisprudence." I.B. at 36. Yet Appellants ignore long-standing Supreme Court precedent regarding what a plaintiff must show to establish discrimination on a dormant Commerce Clause claim.

Appellants have not shown a clear infraction of the dormant Commerce Clause. Accordingly, the District Court was correct in dismissing their claim of facial discrimination and in denying their motion for summary judgment on their claim of discriminatory effects.

### A. **Rule 2-23.4 Does Not Facially Discriminate Against Interstate Commerce**

Courts make the facial discrimination determination based on the text of the law at issue. *See Locke v. Shore*, 634 F.3d at 1192 (holding that licensing law did not discriminate on its face in violation of dormant Commerce Clause because "statutory text" was "neutrally-worded").

Nothing in the language of Rule 2-23.4 favors in-state applicants over out-of-state applicants. The Rule does not even refer to an applicant's residency or geographical location, let alone distinguish on that basis.

### 1. Proper Comparators are Resident Applicants and Non-resident Applicants

In analyzing whether bar admission rules facially discriminate against interstate commerce, Courts of Appeals have asked whether the text of the rule treats resident applicants more favorably than non-resident applicants. These courts

have held that classifying applicants based on state of bar admission does not violate the dormant Commerce Clause provided the bar rule does not treat that state's residents more favorably than non-resident applicants. Where the bar rule treats similarly-situated resident and non-resident applicants the same, as is the case with Rule 2-23.4, there is no facial discrimination.

In *National Association for the Advancement of Multijurisdiction Practice v. Berch*, 773 F.3d 1037, 1048-49 (9th Cir. 2014), the Ninth Circuit rejected an argument very similar to Appellants' argument here. In *Berch*, the court held that Arizona's rule for reciprocal admission did not violate the dormant Commerce Clause. The rule permitted attorneys licensed in another state to be admitted to the Arizona Bar without taking the bar exam if the other state reciprocated by admitting attorneys licensed in Arizona. *See id.* at 1042. If the other state did not have reciprocity with Arizona, then applicants licensed in that state had to incur the costs of taking the bar exam before they could become part of the Arizona Bar. *See id.* Like Florida's Rule 2-23.4, the Arizona rule did <u>not</u> turn on the residency of the applicant. *Id.*

Significantly, the plaintiffs in *Berch* "argue[d] that the AOM Rule violates the Dormant Commerce Clause because it disqualifies attorneys from bar admission *based on the states where they were licensed*, which in turn prevents those attorneys from moving to and practicing in Arizona." *Id.* at 1048 (emphasis

added). The Ninth Circuit rejected that argument, concluding that Arizona's rule did not discriminate against out-of-state interests and favor in-state interests because it did not distinguish on the basis of the applicant's residency. *Id*. at 1049.

In *National Association for the Advancement of Multijurisdiction Practice v. Castille*, the Third Circuit Court of Appeals used the same analysis to hold that a similar Pennsylvania bar admission rule did not facially discriminate in violation of the dormant Commerce Clause. 799 F.3d 216, 225 (3d Cir. 2015). The court found that although the rule classified applicants based on their state of bar admission, the rule did not facially discriminate against interstate commerce because it "d[id] not classify applicants based on residence." *Id*.

And in *Tolchin v. Supreme Court of the State of New Jersey*, an attorney who resided in New York challenged a New Jersey bar rule that required lawyers admitted to the New Jersey bar to maintain a bona fide office in New Jersey and attend certain continuing legal education courses in New Jersey. 111 F.3d 1099, 1102, 1105 (3d Cir. 1997). The plaintiff argued that these requirements "favor[ed] in-state economic interests and amount[ed] to 'economic protectionism' that must be subject to the Commerce Clause's heightened scrutiny standard of review." *Id*. at 1107. The Third Circuit disagreed, observing that the relevant question was "whether there is any differential treatment of nonresident attorneys that 'favors in-state interests over out-of-state interests' and 'the critical consideration is the

27

overall effect of the statute on both local and interstate activity.'" *Id*. (quoting *Brown–Forman Distillers Corp. v. N.Y. Liquor Auth.*, 476 U.S. 573, 579 (1986)). The court held that the bar rule did not facially discriminate against interstate commerce because the rule "applie[d] equally on its face to residents and nonresidents." *Id*. at 1108.

*Berch*, *Castille*, and *Tolchin* illustrate that there is a distinction between state of licensure and state of residence. And comparing similarly-situated resident and non-resident applicants is the proper discrimination analysis. *See Tolchin*, 111 F.3d at 1107 (rejecting plaintiff's argument that New Jersey's bar rule effectively favored resident attorneys and finding that plaintiff's argument failed to implicate the Commerce Clause because out-of-state attorneys may be New Jersey residents as well as nonresidents); *Sestric v. Clark*, 765 F.2d 655, 661 (7th Cir. 1985) (holding that Illinois' reciprocity rule did not violate the Commerce Clause because the rule did not "create[] a barrier to nonresident lawyers"); *cf. Scariano v. Justs. of the Supreme Ct. of the State of Ind.*, 38 F.3d 920, 924 n.4 (7th Cir. 1994) (rejecting constitutional challenge to bar admission rules and recognizing that state of attorney's licensure has "nothing to do" with state of attorney's residence).

Like the plaintiffs in *Berch* and *Castille*, Appellants conflate the concepts of residency and state of bar admission. Rule 2-23 and its subparts are geographically neutral. Florida's application fee rules do not "classify applicants based on

28

residence." *See Castille*, 799 F.3d at 225. Instead, applicants who have practiced more than one year must pay an application fee based on how long they have been practicing law, regardless of whether they reside inside or outside of Florida. *See* Fla. Bar Admiss. R. 2-23.4.

The District Court thus correctly concluded that Rule 2-23.4 does not facially discriminate against interstate commerce. ECF No. 45 at 16 (explaining that Rule 2-23.4, "assess[es] fees based on how long an applicant has *been admitted* to the bar in any jurisdiction other than Florida, but without reference to where the applicant lives or works." … "An applicant living in Florida with a Wyoming bar license would have to pay the fee. But an applicant living in Rhode Island with no prior bar admissions would *not* pay the fee.").

### 2. *Oregon Waste* and *Kuhnlein* are Inapposite Because Rule 2-23.4 Does Not Tax a Transaction or Incident More Heavily When It Crosses State Lines

Recognizing that Rule 2-23.4 does not facially discriminate based on the residency of applicants, Appellants argue that the Rule facially discriminates "independent of residency" against "attorney applicants who hold law licenses from any state other than Florida." I.B. at 38, 46. In making this argument, they place primary reliance on *Oregon Waste* and *Department of Revenue v. Kuhnlein*, 646 So. 2d 717 (Fla. 1994). Neither decision supports their facial discrimination claim.

29

In both *Oregon Waste* and *Kuhnlein*, the laws at issue "tax[ed] a transaction or incident more heavily when it crosses state lines than when it occur[ed] entirely within the State." *Oregon Waste*, 511 U.S. at 99; *Kuhnlein*, 646 So. 2d at 722-724. In *Oregon Waste*, the state of Oregon imposed a surcharge on waste generated out of state that was brought into Oregon from the other state for disposal. *Oregon Waste*, 511 U.S. at 96. In *Kuhnlein*, the state of Florida imposed an impact fee on cars purchased or titled in other states by individuals who later established permanent residency in Florida. 646 So. 2d at 719.

By taxing an item of commerce when it crossed state lines, the laws in both *Oregon Waste* and *Kuhnlein* discriminated against substantially similar entities. *See Oregon Waste,* 511 U.S. at 100 ("differential charge favors shippers of Oregon waste over their counterparts handling [identical] waste generated in other States"); *Kuhnlein*, at 724 ("Florida has erected a financial barrier that gives Florida used-car sellers a substantial advantage over similar out-of-state sellers" of the same used car); *Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493, 500 (5th Cir. 2001) (rejecting argument that *Oregon Waste* found facial discrimination in the absence of a showing of differential treatment of substantially similar entities).

No such discrimination results from Rule 2-23.4, because all similarly-situated attorney applicants are treated the same. In *Oregon Waste*, unlike Rule 2-23.4, Oregon taxed out-of-state waste *when it came into the state for disposal*. In

this case, experienced attorney applicants pay the same fee whether they live in Florida or reside out of state. And the Rule also does not tax an attorney's non-Florida license when it is brought into Florida from another state. Appellants are free to come and go from Florida and use their non-Florida licenses to practice New Jersey and Illinois law, respectively, without paying anything.

District Judge Winsor considered the *Oregon Waste* decision and correctly concluded that it was distinguishable from the facts in this case. ECF No. 45 at 12, 16 (noting that the fee provision in Rule 2-23.4 "does not facially discriminate between an attorney who 'crosses state lines' and one who conducts his business 'entirely within the state.'"). *Cf. Yerger v. Mass. Tpk. Auth.*, 395 F. App'x 878, 882 (3d Cir. 2010) (distinguishing law in *Oregon Waste* from Massachusetts' Fast Lane Discount Program (FLDP) which provided toll discounts for drivers subscribed to FLDP toll payment system, but not to drivers subscribed to E-Z Pass, finding no facial discrimination because "FLDP is available on identical terms to drivers without regard to their residence [and] incorporates no distinctions or classifications based on residence").

Appellants contend that the Florida Supreme Court's decision in *Florida Bar re Advisory Opinion—Out-of-State Attorney Working Remotely from Florida Home*, 318 So. 3d 538 (Fla. 2022) (*Working Remotely*) supports their discrimination argument. It does not. The Court in *Working Remotely* held that a lawyer licensed in New Jersey, who worked remotely from his home in Florida on

31

non-Florida matters, was not engaged in the unlicensed practice of Florida law. *Working Remotely* shows that a lawyer licensed in New Jersey or Illinois is free to cross state lines into Florida and continue to practice New Jersey and Illinois law, respectively, and Rule 2-23.4 does not impose any tax on that activity.

Appellants are incorrect to say that, like the law in *Oregon Waste*, Rule 2-23.4 discriminates by making a *geographic* distinction between law licenses issued in Florida and law licenses issued elsewhere. Appellants make a false comparison (trying to compare Florida law licenses with licenses from other jurisdictions). Rule 2-23.4 does not distinguish between licenses issued in Florida and licenses issued elsewhere—Florida's Bar Admission Rules govern applicants *who do not yet have a Florida license*. In fact, the Rule distinguishes between: (1) applicants previously admitted in another jurisdiction for over a year and (2) applicants not previously admitted in another jurisdiction for over a year (which includes law students and new attorneys). The Rule applies equally to all applicants regardless of their geographic location.

The decisions in *Oregon Waste* and *Kuhnlein* are, thus, inapposite.[5] District Judge Winsor did not err in dismissing Appellants' dormant Commerce Clause claim of facial discrimination.

---

[5] Notably, the same Florida Supreme Court that decided *Kuhnlein* approved Rule 2-23.4 just two years later. The Court clearly saw a distinction between the law in *Kuhnlein* and Rule 2-23.4.

**B. Rule 2-23.4 Does Not Discriminate Against Interstate Commerce in Practical Effect**

Drwencke argues on appeal that Rule 2-23.4 discriminates in practical effect against "out of state economic interests" (incorporating his facial discrimination claim based on *Oregon Waste*), I.B. at 50; and he also argues that the Rule discriminates in practical effect based on residency. I.B. at 50-58. Drwencke has not shown that District Judge Winsor erred in denying his motion for summary judgment because, drawing all reasonable inferences in favor of the Board and Gavagni, Drwencke failed to demonstrate below that the undisputed facts showed that Rule 2-23.4 discriminates in practical effect.

1. Drwencke is Foreclosed from Arguing that Rule 2-23.4 Discriminates Based on Residency.

In his motion for summary judgment, Drwencke did not argue that Rule 2-23.4 discriminates in practical effect against non-resident applicants. He argued only that Rule 2-23.4 discriminated in practical effect against "out-of-state-economic *interests*" (his facial discrimination claim based on *Oregon Waste*). ECF No. 80 at 1 (emphasis in original). And Drwencke took the position that his claim of discrimination against "out-of-state *residents*" was "not yet ripe for adjudication." *Id.* at 7-9. As noted by District Judge Winsor, Drwencke argued on summary judgment that the "license holder's physical location is immaterial to the constitutional analysis." ECF No. 95 at 12.

33

Because Drwencke did not present his residency-based claim of discrimination to the District Court in his motion for summary judgment, he is precluded from raising that argument on appeal. *See Baez v. Specialized Loan Servicing, LLC*, 709 F. App'x 979, 984 (11th Cir. 2017) (appellant did not properly preserve issue for appeal where she never put forth the specific argument in the district court that she advanced on appeal); *Iglesias v. Pernod Richard*, 2022 WL 1815846, at *3 (11th Cir. 2022) (same). Accordingly, Drwencke cannot show that District Judge Winsor erred in denying summary judgment on a claim of residency-based discrimination.

### 2. Incorporation of Facial Discrimination Claim Does Not Show Discriminatory Effects

Drwencke incorporates his *facial* discrimination argument based on *Oregon Waste* and claims that he does not have to show any discrimination in *practical effect* because Rule 2-23.4 discriminates on its face. I.B. at 50. Drwencke is just reasserting his facial discrimination claim in the guise of a discriminatory effects claim. His citation to *Wyoming v. Oklahoma*, 502 U.S. 437 (1992) and *Chemical Waste Management, Inc. v. Hunt*, 504 U.S. 334 (1992), do not change the analysis of his facial discrimination claim. These decisions, like *Oregon Waste*, are inapposite because they involve laws that are unlike Rule 2-23.4. As explained above, Rule 2-23.4 does not facially discriminate against interstate commerce.

3. <u>Applying *Locke* Factors, Rule 2-23.4 Does Not Discriminate in Practical Effect</u>

In the order denying Drwencke's summary judgment motion, District Judge Winsor analyzed Drwencke's claim of discriminatory effects using the factors identified by the Eleventh Circuit in *Locke v. Shore* to guide the court in determining whether a law has a discriminatory impact. ECF No. 95 at 9-13. Applying the *Locke* factors, Drwencke failed to show any discriminatory impact on interstate commerce.

### a) *Rule 2-23.4 Does Not Exclude Out-of-State Residents*

District Judge Winsor correctly concluded that Drwencke failed to show that Rule 2-23.4 excludes a class of predominantly out-of-state residents from The Florida Bar. ECF No. 95 at 11. As Judge Winsor noted, "Drwencke points to no evidence that Rule 2-23.4 excludes any nonresidents from the Florida legal market." *Id*. Drwencke submitted no evidence of exclusion. ECF No. 80. And the Board submitted evidence in support of its summary judgment motion showing that there was no exclusion, because hundreds of non-resident attorneys apply for admission to The Florida Bar each year, and the numbers of those applicants have even been increasing in recent years. ECF No. 69-2 and 69-3.

Contrary to Drwencke's argument, Judge Winsor properly applied the first *Locke* factor. Drwencke's "heightened fee" argument, I.B. at 51, relates to the

second *Locke* factor (regarding costs) used by courts to guide the discriminatory effects analysis, not the first *Locke* factor (regarding exclusion). Judge Winsor correctly found that the first *Locke* factor required exclusion from the market. *See, e.g., Locke*, 634 F.3d at 1193 (under first factor, law that "somewhat restricts entry," but "does not block it altogether," does not support finding of discriminatory effect). *Accord Flynt v. Bonta*, 2025 WL 815194, *5 (9th Cir. 2025) (no discrimination where law did not "exclude all out-of-state market participants and interstate capital from California's cardroom market"); *Regan v. City of Hammond*, 934 F.3d 700, 703 (7th Cir. 2019) ("If the impact is so strong that the law *effectively operates as an embargo* on interstate commerce, it is treated as the equivalent of a facially discriminatory law and is subject to the same demanding scrutiny"); (emphasis added); *Garber v. Menendez*, 888 F.3d 839, 843-44 (6th Cir. 2018) ("Nor does the law's surface neutrality disguise a cognizable protectionist effect. The Ohio tolling statute does not operate like an embargo on interstate commerce while leaving intra state transactions unhindered").

      b) *Rule 2-23.4 Does Not Impose Costs on Out-of-State Residents that In-State Residents Do Not Have to Pay*

Judge Winsor correctly concluded that Drwencke failed to show that Rule 2-23.4 imposes costs on non-resident applicants that resident applicants do not have to pay. ECF No. 95 at 11-12.

Drwencke argues that a discriminatory effect is shown by the percentage of non-resident applicants who pay the experienced attorney fee as compared with the percentage of Florida residents (law students and attorneys admitted less than one year) who do not pay the fee. I.B. at 53-58. Drwencke's argument should be rejected.

First, as noted above, in his motion for summary judgment, ECF No. 80, Drwencke did not argue *residency-based* discrimination. He contended residency was "immaterial" and stated that the residency-based discrimination claim was not ripe. ECF No. 95 at 12. Additionally, although Drwencke's appellate argument is predicated on a statistic that 87% of the applicants who do not pay the fee (law students and attorneys admitted less than one year) are Florida residents, this figure is not mentioned in Drwencke's motion for summary judgment (ECF No. 80), the response to the motion (ECF No. 87, 88) or Drwencke's summary judgment reply (ECF No. 92). In his Initial Brief, I.B. at 24, Drwencke cites to an affidavit that he filed in opposition to the Board's motion for summary judgment that includes the 87% figure (ECF No. 98-1), but that document was not filed until <u>after</u> Judge Winsor had already denied Drwencke's motion for summary judgment (ECF No. 95). Drwencke is thus foreclosed from making this residency-based argument on appeal, and District Judge Winsor cannot have erred for failing to credit information that was not presented to him at the time.

37

Second, Drwencke has not shown discriminatory effects because the individuals he identifies as comparators are not similarly situated to experienced attorney applicants. Drwencke did not demonstrate to the District Court that the financial status and background investigation work related to law students is sufficiently similar to that of experienced attorney applicants to support a finding of discrimination without genuine dispute based on that comparison. *See Davis,* 553 U.S. at 342-43 (2008) (fundamental element of dormant Commerce Clause jurisprudence is the principle that discrimination assumes a comparison of substantially similar entities); *Tracy,* 519 U.S. at 310 (state law that distinguished between regulated sellers and independent marketers of natural gas was not discriminatory because regulated sellers and independent marketers were not similarly situated); *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown,* 567 F.3d 521, 525 (9th Cir. 2009) ("To determine whether the laws have a discriminatory effect it is necessary to compare [plaintiff] with a similarly situated in-state entity") *Ford Motor,* 264 F.3d at 500  ("The [U.S. Supreme] Court's jurisprudence finds discrimination only when a State discriminates among similarly situated in-state and out-of-state interests"); *Regan,* 934 F.3d at 704 (ordinance's differential treatment of landlords and homeowners could not show discriminatory effect because landlords and homeowners were not similarly situated).

38

For an experienced attorney applicant like Drwencke, a similarly situated comparator is another experienced attorney applicant, not a law student. Attorney applicants with the same level of experience pay the same application fees under Rule 2-23.4 regardless of where they reside.

Third, where a state law applies the same way to individual residents and nonresidents, a plaintiff cannot show a discriminatory effect on the basis that nonresidents bear more of the law's overall burden. To start, the U.S. Supreme Court has rejected the argument that a state law has discriminatory effects "because it will apply most often to out-of-state entities." *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 88 (1987). *CTS* involved a dormant Commerce Clause challenge to an Indiana statute that regulated tender offers for shares in Indiana corporations. *Id.* at 72-75. The Court found that the statute had "the same effects on tender offers whether or not the offeror is a domiciliary or resident of Indiana." *Id.* at 88. The plaintiff, however, maintained that the statute discriminated against interstate commerce because "most hostile tender offers are launched by offerors outside Indiana." *Id.* The Court found that the plaintiff's theory did not establish discriminatory effects, noting "[t]he fact that the burden of a state regulation falls on some interstate companies does not, by itself, establish a claim of discrimination against interstate commerce." *Id.* (quoting *Exxon Corp. v. Governor of Md.*, 437 U.S 117 (1978)).

39

Similarly, in *New York Pet Welfare Association, Inc. v. City of New York*, the plaintiff challenged a city ordinance requiring that pet shops sell only animals acquired from breeders holding a "Class A" license issued under federal law. 850 F.3d 79, 83 (2d Cir. 2017). As a result, distributors who held a "Class B" license were prohibited from selling animals to pet shops. *Id*. at 84, 86. The plaintiff argued that the law "discriminates against interstate commerce because the vast majority of Class B distributors … are located outside New York." *Id*. at 91. Relying on *CTS*, the Second Circuit found that theory insufficient to prove discriminatory effects. *Id.*

The Third Circuit reached the same outcome in a dormant Commerce Clause challenge to a usage tax on timeshare units in *Virgin Islands. Am. Resort Dev. Ass'n v. Gov't of Virgin Islands*, 848 F. App'x 79 (3d Cir. 2021). The facts showed that "because the Virgin Islands has few residents but a large tourism industry, non- residents own over 99% of the interests in timeshare units within the Territory and contribute most revenue the Tax raises." *Id*. at 80. Even with nonresidents shouldering nearly all of the tax's burden, the court found no discriminatory effect because "the Territory taxes resident and non-resident taxpayers at equal rates." *Id*. at 83.

The Virgin Islands court added that the plaintiff's theory was flawed because it would invalidate other common practices, such as hotel taxes, that may burden

40

more nonresidents than residents. *Id*. at 83 ("[W]e could not conclude the Timeshare Tax reflects discriminatory intent or effect without casting a cloud over numerous other tourist taxes. These taxes include not only the Virgin Islands' standard hotel tax … but also many other jurisdictions' taxes on parking or lodging"). Drwencke's position here raises the same concern. Indeed, Drwencke argues that whenever nonresidents compose more than 50% of the people who incur a state-imposed cost, the cost "predominantly" affects nonresidents.

Other Courts of Appeals have adopted the same analysis. *See Int'l Truck and Engine Corp. v. Bray*, 372 F.3d 717, 726 (5th Cir. 2004) (finding no discrimination where plaintiff contended that "practical effect" of state law fell "primarily" on out-of-state entities, stating: "That all or most affected businesses are located out-of-state does not tend to prove that a statute is discriminatory"); *LensCrafters, Inc. v. Robinson*, 403 F.3d 798, 805 (6th Cir. 2005) ("fact that [state law] may disproportionately affect interstate optical companies is not determinative … [W]e find that the district court was correct in holding that [state law] does not have a discriminatory effect;"); *see also Truesdell v. Friedlander*, 80 F.4th 762, 771 (6th Cir. 2023) ("a court must not confuse a law that has only a disparate impact on out-of-state businesses for one that has discriminatory effects on interstate commerce").

The case at hand falls squarely within the foregoing line of cases. A 10-year lawyer applying to The Florida Bar pays the same fee whether that person resides

41

in Florida or Illinois. That fact resolves the second *Locke* factor in the Board's favor, regardless of Drwencke's percentage-based comparisons and ratios. Drwencke's contrary argument for an expansive dormant Commerce Clause interpretation is inconsistent with the U.S. Supreme Court's recent admonition that "extreme caution" should be exercised in dormant Commerce Clause cases and that a violation should be found "only where the infraction is clear." *Pork Producers,* 598 U.S. at 390.

### c)  No Protectionist Purpose

Contrary to the statement in Appellants' Brief, I.B. at 58, the Board has <u>not</u> admitted that Rule 2-23.4 is protectionist. District Judge Winsor correctly determined that neither the Florida Supreme Court's orders adopting the rule changes, nor the Board's proposals, reflected any protectionist motivation, and Drwencke "point[ed] to no evidence suggesting an impermissible motive." ECF No. 95 at 13. *See also Kirkpatrick v. Shaw*, 70 F.3d 100, 102 (11th Cir. 1995) (where attorney licensed to practice in Oklahoma and New York alleged that the Board's "requirements for attorneys who had been previously admitted in other jurisdictions were unduly burdensome" and "have a protectionist purpose (i.e., to prevent out-of-state attorneys from practicing law in Florida)," court held that plaintiff failed to show rules had a protectionist purpose).

    4.  <u>Disputed Issues of Fact about Legitimate Local Purpose and Absence of Alternatives Preclude Summary Judgment for Appellant</u>

Because Drwencke failed to show a discriminatory effect, Judge Winsor did not address whether there was a dispute of fact regarding whether the Board had a "legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *See Bainbridge v. Turner*, 311 F.3d 1104, 1109 (11th Cir. 2002). However, the Board did submit evidence that created a genuine issue of fact on this issue. ECF No. 87 at 25-32; ECF 88-2 at 6-9.

    5.  <u>Disputed Issues of Fact About Standing Preclude Summary Judgment for Appellant</u>.

In its Answer, the Board denied that Drwencke had standing to seek injunctive relief, and the Board also disputed standing in response to Drwencke's motion for summary judgment. ECF No. 87 at 33. The genuine dispute of fact regarding standing is an additional reason to affirm the order denying Drwencke's motion for summary judgment. See *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 886, n. 9 (11th Cir. 2000) ("We add that the district court cannot grant summary judgment in favor of the Plaintiffs on their as applied claim without first finding, after appropriate review, that they have standing to assert such a claim.").

## II. <u>The Board and Gavagni are Entitled to Eleventh Amendment Immunity</u>

Hernandez's sole argument regarding dismissal of his claims for monetary relief based on Eleventh Amendment immunity is that the District Court

misapplied the factors in *Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003). It is

Hernandez who misapplies *Manders*, however, and he also fails to recognize that

the Florida Supreme Court has defined the Board to be an arm of the Court.

### A. <u>The Board Has Eleventh Amendment Immunity Because it is an Official Arm of the Florida Supreme Court</u>

It is well-established that the Florida Supreme Court is entitled to Eleventh

Amendment immunity. *See Uberoi v. Supreme Court of Fla.*, 819 F.3d 1311, 1313

(11th Cir. 2016); *Telasco v. Fla. Bar*, 853 F. App'x 608 (11th Cir. 2021). Eleventh

Amendment immunity also "extends to the Florida Bar because it is an official arm

of the Florida Supreme Court, and therefore, an arm of the state itself." *Cichowski v.*

*Totten*, 2024 WL 2182487, at *2 (11th Cir. 2024) (citing *Kaimowitz v. Fla. Bar*, 996

F.2d 1151, 1155 (11th Cir. 1993)), *cert. denied,* 145 S. Ct. 418 (2024).

Like The Florida Bar, the Board is also an "arm of" the Florida Supreme

Court. In *Fla. Bd. of Bar Exam'rs re: Applicant*, 443 So. 2d 71, 74 (Fla. 1983), the

Court stated:

> The exclusive jurisdiction to regulate admission of persons to the
> practice of law is vested in this Court. Art. V, § 15, Fla. Const. We
> established the Florida Board of Bar Examiners *as an arm of this*
> *Court* to assist us in this function.

*Id*. (emphasis added). *See also In re Fla. Bd. of Bar Exam'rs*, 353 So.2d 98, 100 (Fla.

1977) (stating Board "is an attache of this Court" and that "[a]s an arm of this Court,

the Board is answerable solely to this tribunal"); *Fla. Bd. of Bar Exam'rs v. G. W. L.*,

364 So. 2d 454, 455 (Fla. 1978) (stating that Board acts as its "agent" when doing its work); *Fla. Bd. of Bar Exam'rs re Groot*, 365 So. 2d 164, 165 (Fla. 1978) (same).

Because the Board is an "arm of" the Florida Supreme Court, it is (like The Florida Bar), "an arm of the state itself," *Cichowski,* 2024 WL at *2, entitled to Eleventh Amendment immunity. *See Stoddard v. Fla. Bd. of Bar Exam'rs*, 229 F. App'x 911 (11th Cir. 2007), *aff'g*, 509 F. Supp. 2d 1117, 1123 (N.D. Fla. 2006) (Board entitled to Eleventh Amendment immunity). *Cf. Ramos v. Tomasino*, 701 F. App'x 798, 803-804 (11th Cir. 2017) (Board entitled to *Parker* immunity as an "arm of" Florida Supreme Court, observing that Sherman antitrust claims against the Board were "in effect, against the Supreme Court of Florida"). *Accord Dubuc v. Michigan Bd. of L. Exam'rs*, 342 F.3d 610, 612 (6th Cir. 2003) (Michigan Board of Law Examiners entitled to Eleventh Amendment immunity).

## B. The *Manders* Analysis Supports Eleventh Amendment Immunity

Contrary to Hernandez's argument, all four factors of the *Manders* analysis support Eleventh Amendment immunity for the Board.

### 1. State Law Defines the Board as an Arm of the Florida Supreme Court

How state law defines the entity is one of the most important factors in determining whether an entity is an arm of the state and thus entitled to immunity. *Monroe v. Fort Valley State Univ.*, 93 F.4th 1269, 1279 (11th Cir. 2024), citing *Versiglio v. Bd. of Dental Exam'rs of Ala.*, 686 F.3d 1290, 1292 (11th Cir. 2012).

45

This factor includes "how the entity has been treated by the state courts." *Ross v. Jefferson Cty. Dept. of Health*, 701 F.3d 655, 659 (11th Cir. 2012) (quoting *Versiglio,* 686 F.3d at 1291).

In *Versiglio*, the court *initially* held that the board of dental examiners was not entitled to Eleventh Amendment immunity, but withheld issuance of its mandate upon discovering that the Alabama Supreme Court had granted certiorari to decide whether the board was an arm of the State under state law. 701 F.3d at 659. When the Alabama Supreme Court later held that the board *was* an arm of the State, the Eleventh Circuit vacated its prior opinion and entered a new opinion holding that the defendant was an arm of the State entitled to Eleventh Amendment immunity. *Id*.

Contrary to Hernandez's argument, the Florida Supreme Court has not defined the Board as an "independent agency." I.B. at 62. Rather, as stated above, the Florida Supreme Court defines the Board as an arm of the Court. Moreover, the Court includes the Board as part of Florida's judicial branch of government," *see* Fla. R. Jud. Amin. 2.440(a)(1), and the Court has also promulgated a rule investing the Board and its officers with immunity from suit for conduct undertaken within the scope of their duties, *see* Fla. Bar Admiss. R 1-71.

Accordingly, the first *Manders* factor is not "neutral." I.B. at 62. This "most important" factor "strongly favors treating the Board as an arm of the State," and

weighs heavily in favor of immunity. *See Monroe*, 93 F.4th at 1280; *Ross*, 701 F.3d at 659.

### 2. Florida Supreme Court Maintains Control of the Board

Hernandez argues that discovery is needed to assess how much control the Florida Supreme Court maintains over the Board. I.B. at 63. It is not.

First, Hernandez's allegation that the Florida Supreme Court "retains little control over the Board," *id*. (citing ECF No. 107 at 23), is a conclusory legal assertion entitled to no presumption of truth. *See Cullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (Courts must identify and discard "conclusory allegations" … "because their conclusory nature 'disentitles them to the presumption of truth.'").

Second, Hernandez acknowledges that the *Manders* factors are analyzed in light of "the structure of the office vis a vis the State and the *functions at issue*." I.B. at 61 (emphasis added), citing *Lake v. Skelton*, 840 F.3d 1334, 1337-38 (11th Cir. 2016). The function at issue here is requiring applicants to pay the application fee in Rule 2-23.4, the amount of which is set by the Florida Supreme Court. ECF No. 46 at 10, ¶27 and 20, ¶97 (Third Amended Complaint); *see* Fla. Bar Admiss. R. 2-23 ("All fees are set by order of the Supreme Court of Florida").

Third, provisions in the Florida Constitution, the Bar Admissions Rules and decisions of the Florida Supreme Court leave no doubt about the Court's exercise

of control over the Board. *See* Fla. Const. art. V, § 15 (Board performs functions "within the exclusive jurisdiction" of the Court); Fla. Bar Admiss. R. 1-22, 1-23, 1-40 (Court appoints members of the Board and establishes their duties and the requirements for their meetings); *Id*. R. 1-51, 1-52 (Board required to submit a proposed budget for Court's approval each year and to also file annual audits with the Court); *In re Fla. Bd. of Bar Exam'rs*, 353 So. 2d at 100 ("Board is answerable solely to" the Court).

The District Court thus correctly concluded that the second *Manders* factor favors immunity. ECF No. 40 at 8.

### 3.  State Law Requires the Board to Supply its Funds

The fact that the Board is funded through applicant fees does not support Hernandez's argument under the third *Manders* factor.

First, in cases where state law requires an entity to supply the funds at issue, the source of the funds will not weigh against immunity. *See Ross*, 701 F.3d at 660 (that county was source of funds did not weigh against immunity because state law required county health department to supply funds at issue). The Bar Admission Rules require the Board to supply the funds to do its work. *See* Fla. Bar Admiss. R. 1-51.2 ("The board will make such disbursements as are required to pay the necessary expenses of the board."); *Id*. 1-53 (The board "will provide for the compensation of employees and will pay expenses incurred in the performance of

their official duties."); *Id*. 3-17 (directing the board to charge applicants for certain extraordinary investigative expenses).

Second, as the District Court correctly recognized, "arms of the state commonly acquire funds from user fees." ECF No. 45 at 8 (noting that Florida Supreme Court receives filing fees), citing *Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1521 (11th Cir. 1983) (Eleventh Amendment applied to Park Authority even though it was "self-supporting and received no state funds"); *Jagnandan v. Giles*, 538 F.2d 1166, 1176 (5th Cir. 1976) (Eleventh Amendment applied to university regarding suit for tuition fee refunds). This is also true of The Florida Bar which has Eleventh Amendment immunity. *See* R. Regulating Fla. Bar 1-7.3 (Membership Fees Requirement); *Id*. Bylaw 2-6.8.

Third, the budget approval process in the Bar Admission Rules weighs in favor of immunity regarding this factor. *Cf. Williams v. Dist. Bd. of Trs. of Edison Cmty. Coll.*, 421 F.3d 1190, 1194 (11th Cir. 2005) (holding that public-funds factor weighed in favor of immunity even though defendant was "not exclusively funded by the state," in part because "state approval of institutional budgets evidences state control" (citing *Harden v. Adams*, 760 F.2d 1158, 1163-64 (11th Cir. 1985)).

### 4. Any Judgment Against the Board Would Implicate State Funds

Hernandez contends that the fourth *Manders* factor is dispositive, and defeats any claim to Eleventh Amendment immunity, arguing that a judgment

against the Board would not be paid out of "state funds." Hernandez also claims a need for discovery on this factor. I.B. at 65. Hernandez's conclusory allegations notwithstanding, the Bar Admission Rules make clear that, as the District Court correctly concluded, the funds of the Board that would be subject to a judgment *are* "state funds." ECF No. 40 at 8-9; ECF No. 45 at 8.

The authority to require bar applicants to pay application fees rests with the Florida Supreme Court, not the Board. *See* Fla. Bar Admiss. R. 2-23. The Board *administers* that authority as an arm of the Court, but the *authority* to compel bar applicants to pay fees comes from the Court and, hence, the State of Florida. The funds received by the Board from bar applicants, therefore, are funds that essentially belong to the Florida Supreme Court and are administered by the Board as an "agent" of the Court. *Fla. Bd. of Bar Exam'rrs v. G. W. L.*, 364 So. 2d at 455 (stating that Board acts as "agent" of the Court).

Additionally, the requirement in the Bar Admission Rules that the Board submit its budget to the Florida Supreme Court for approval each year, R. 1-51, Fla. Bar Admiss. R., indicates that state funds would be implicated by any judgment against the Board. *See Fouche*, 713 F.2d at 1521; *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1234 (11th Cir. 2000).

50

Finally, Hernandez incorrectly argues that the fourth *Manders* factor is dispositive. I.B. at 65-68. The following decisions relied upon by Hernandez all predate *Manders* and are distinguishable: *Sea Servs. of the Keys, Inc. v. State of Fla.*, 156 F.3d 1151 (11th Cir. 1998) (involved an *in rem* admiralty action where the *res* was not in the state's possession); *Jackson v. Dep't of Transp.*, 16 F.3d 1573 (11th Cir. 1994) (statement relied upon by Hernandez was dicta); *Travelers Indem. Co. v. Sch. Bd. of Dade Cnty., Fla.*, 666 F.2d 505 (11th Cir. 1982) (involved claims against a county school board with no basis for claiming arm-of-the-state status).[6]

Moreover, Eleventh Circuit "precedent holds that liability by the state treasury is not determinative of whether a governmental entity should enjoy Eleventh Amendment immunity." *Ross*, 701 F.3d at 660. The Eleventh Circuit thus "do[es] not limit Eleventh Amendment immunity 'to who foots the bill ....'" *Id*. *See also Brown v. Citizens Property Ins. Corp.*, 845 F. App'x 860, 862 (11th Cir. 2021) ("[A]n actual drain on the state treasury is not required for immunity to apply [under *Manders*.]") (quoting *Skelton*, 840 F.3d at 1344).

---

[6] The two *post-Manders* decisions that Hernandez relies upon*, Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298 (11th Cir. 2005) and *Pellitteri v. Prine*, 776 F.3d 777 (11th Cir. 2015), undercut his position. In *Abusaid*, the court examined all four factors even though the fourth *Manders* factor weighed against immunity. In *Pellitteri*, the court held that a county sheriff *was* entitled to Eleventh Amendment immunity even though the court concluded that the fourth *Manders* factor weighed against immunity.

### III.    Gavagni is Not Subject to Suit in Her Personal Capacity

The District Court was correct in dismissing Hernandez's personal-capacity claim against Gavagni based on qualified immunity. And this claim is also subject to dismissal for failure to state a claim and based on legislative and quasi-judicial immunity.

### A. Qualified Immunity

Hernandez's sole argument regarding qualified immunity is that the District Court erred in concluding that the Supreme Court's decision in *Oregon Waste* did not give Gavagni fair warning that the application fee approved by the Florida Supreme Court in 1996, and again in 2010, violated the dormant Commerce Clause. Hernandez's argument has no merit.

First, as explained above, Rule 2-23.4 does not violate the dormant Commerce Clause, either facially or in effect. Second, even if there were some question about the constitutionality of Rule 2-23.4 (and there is not), the Supreme Court's decision in *Oregon Waste* is not so "clear and broad" that a reasonable government official like Gavagni would know that implementing Rule 2-23.4 would violate Hernandez's rights under the dormant Commerce Clause. *See Gaines v. Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017) ("obvious clarity" cases "do not often arise"). Appellants never explain how it should have been obvious to Gavagni that Rule 2-23.4 violated the dormant Commerce Clause when

52

the supposed violation was not obvious to the seven Florida Supreme Court Justices who approved the rule in 1996 and 2010.

### B. <u>Additional Grounds for Dismissal</u>

This Court may affirm on "any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). Gavagni also moved for dismissal because Hernandez failed to state a claim for relief and because she was entitled to legislative and quasi-judicial immunity. ECF No. 23 at 25-27; ECF No. 37 at 1-4. These are additional grounds for affirmance. *See Young v. Grand Canyon Univ., Inc.*, 980 F.3d 814, 821 n.4 (11th Cir. 2020) ("appellee may urge [this Court] to affirm on any basis supported by the record").

### 1. <u>Failure to State a Claim</u>

Even if Hernandez had a viable dormant Commerce Clause claim against the Board (he does not), he still would not have a viable claim against Gavagni in her personal capacity. Hernandez makes only vague and conclusory allegations, "on information and belief," against Gavagni individually. ECF No. 14 at 12-13; ECF No. 41-1 at 17-19. And he fails to allege facts showing that Gavagni personally participated in any alleged constitutional deprivation. Accordingly, he failed to state a claim for relief. *See Smith v. Deal*, 760 F. App'x 972, 975 (11th Cir. 2019).

2. Legislative Immunity

To the extent Hernandez seeks relief based on Gavagni's alleged involvement in recommending changes to the Bar Admission Rules, she is immune from suit (both personally and in her official capacity) based on legislative immunity.

Legislative immunity "provides protection from suit to government officials when they take actions that are 'an integral part of the deliberative and communicative processes'" relating to "the consideration and passage or rejection of proposed legislation." *Smith v. Lomax*, 45 F.3d 402, 405 (11th Cir. 1995) (quoting *Gravel v. United States*, 408 U.S. 606, 625 (1972)). Legislative immunity applies to the promulgation of bar rules by a state's highest court, *Supreme Ct. of Va. v. Consumers Union of the United States*, 446 U.S. 719, 734 (1980), and to proposing bar rules to a state supreme court. *See McFarland v. Folsom*, 854 F. Supp. 862, 875-76 (M.D. Ala. 1994); *Feliciano v. Tribunal Supreme De Puerto Rico*, 78 F. Supp. 2d 4, 13 (D.P.R. 1999); *Leclerc v. Webb*, 270 F. Supp. 2d 779, 794 (E.D. La. 2003); *Julien v. Comm. of Bar Exam'rs for Practice of Law*, 923 F. Supp. 707, 715 n.6 (D. V.I. 1996) ("bar examiners engaged in the promulgation of rules for admission are protected by legislative immunity").

### 3. Quasi-Judicial Immunity

Quasi-judicial immunity derives from absolute judicial immunity. *Higdon v. Tusan*, 746 F. App'x 805, 811 (11th Cir. 2018). Nonjudicial officials have absolute immunity for their duties that are "integrally related to the judicial process." *Roland v. E.W. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994); *Jenkins v. Clerk of Ct., U.S. Dist. Ct., S. Dist. of Fla.*, 150 F. App'x 988, 990 (11th Cir. 2005).

Because admission of attorneys to The Florida Bar is a judicial function, Art. V, § 15, Fla. Const.; Fla. Bar. Admiss. R. 1-11; *Dale v. Moore*, 121 F.3d 624, 626-27 (11th Cir. 1997), persons integrally involved in this process are entitled to quasi-judicial immunity. *Cf. Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (members of bar grievance committee entitled to quasi-judicial immunity because they "were acting as agents of the Florida Supreme Court"). *Accord Brown v. Bowman*, 668 F.3d 437, 445-46 (7th Cir. 2012) (participants in bar admission process entitled to quasi-judicial immunity); *Lawrence v. Welch*, 531 F.3d 364, 372 (6th Cir. 2008) (same); *Sparks v. Character and Fitness Comm. of Ky.*, 859 F.2d 428, 431 (6th Cir. 1988) (same), *cert. denied*, 489 U.S. 1011 (1989).

Gavagni's implementation of Rule 2-23.4 is an integral part of the admissions process. *Cf. Bullock v. Paris*, 2024 WL 4717950, at *6 (11th Cir. 2024) (affirming dismissal of claim against clerk "because processing court filings is within a clerk's official duties and integrally related to the judicial process");

*Harned v. Fulton Cnty. Clerk of Court's Off.*, 2024 WL 4050561, at *3 (11th Cir. 2024) (clerk's staff entitled to immunity regarding refusal to file motion based on interpretation of court order). *Accord Collins v. Daniels*, 2017 WL 11441859, at *19 (D.N.M. 2017) (immunity applied to court staff who were "sued only because they implemented court rules and orders"), *aff'd*, 916 F.3d 1302 (10th Cir. 2019); *Ofori v. Williams*, 2021 WL 3737706, at *3 (E.D. Va. 2021) (clerk of court entitled to immunity in requiring payment of filing fee where judge had denied motion to proceed *in forma pauperis*), *aff'd*, 2022 WL 2989956, at *1 (4th Cir. 2022).

## <u>CONCLUSION</u>

The Board and Gavagni request that the District Court be affirmed.

Respectfully submitted,

/s/ *James J. Dean*
James J. Dean
Florida Bar No.: 832121
Nicholas R. Cleary
Florida Bar No.: 1017774
Primary Email: jdean@lawfla.com
ncleary@lawfla.com
Secondary Email: lkubancek@lawfla.com
**MESSER CAPARELLO, P.A.**
2618 Centennial Place
Tallahassee, Florida 32308
Telephone: (850) 222-0720
*Counsel for Appellees*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

I HEREBY CERTIFY, pursuant to Rule 32(g), Federal Rules of Appellate Procedure, that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,928 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirement of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 97 in 14-point Times New Roman.

/s/ *James J. Dean*
James J. Dean

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 26th day of March, 2025, I caused this Brief of Appellee to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

I further certify that on this 26th day of March, 2025, I caused the required number of bound copies of the foregoing Brief of Appellee to be filed, via FedEx, with the Clerk of this Court.

/s/ *James J. Dean*
James J. Dean

# **<u>ADDENDUM</u>**

# RULES OF THE SUPREME COURT
# RELATING TO ADMISSIONS TO THE BAR

## RULE 2 APPLICATION REQUIREMENTS

\* \* \*

### 2-20 Applications and Fees.

**2-21 Applications.** Every applicant for admission to The Florida Bar must file with the board a Bar Application on the form available on the board's website. Law student registrants who register with the board under rule 2-21.2 must file a Registrant Bar Application and a Supplement to Registrant Bar Application. The Bar Application or Registrant Bar Application must be completed interactively online using instructions on the board's website.

**2-21.1 Admission to General Bar Examination.** A person who, prior to the applicable filing deadline specified in rule 4-42 or the applicable late filing deadline specified in rule 4-43, has not filed with the board the Bar Application (or, in the case of a law student registrant, the Registrant Bar Application and the Supplement to Registrant Bar Application) and paid the appropriate filing fees will not be permitted to take the General Bar Examination.

**2-21.2 Registration.** Law students are encouraged to register with the board within the first year of law school. Every law student intending to apply for admission to The Florida Bar, following the commencement of the study of law in an accredited law school, may register with the board by filing a Registrant Bar Application on the form available on the board's website accompanied by the applicable filing fee, and any supplemental documents that reasonably may be required by the board. See rule 2-23.1 for a schedule of fees. A basic character and fitness investigation will be conducted in areas of possible concern on each registrant. The Registrant Bar Application must be converted into a Bar Application by the filing of a Supplement to Registrant Bar Application available online on the board's website. Each law student registrant is encouraged to file the Supplement to Registrant Bar Application at the beginning of the student's final

year in law school to ensure timely completion of the board's character and fitness investigation.

**2-22 Character and Fitness Investigation.** On the filing of a Bar Application or a Registrant Bar Application, the board will initiate a character and fitness investigation under these rules. When a law student registrant files a Supplement to Registrant Bar Application, the board will update the character and fitness investigation conducted following such student's filing of the Registrant Bar Application.

**2-23 Application Fees.** All fees are set by order of the Supreme Court of Florida and are subject to change by published order of the court. The total application fee is due and payable to the Florida Board of Bar Examiners by the applicant when filing the Bar Application, the Registrant Bar Application, or the Supplement to Registrant Bar Application, and no application will be considered complete without the full fee. Any fee paid by an applicant or registrant will not be refunded.

**2-23.1 Student Registrant Fee.** Except as provided below, every law student filing a Registrant Bar Application with the board must file with the completed Registrant Bar Application the fee of $400. For any law student who files a Registrant Bar Application by the deadlines established, discounted early registration fees are available as follows:

**a. $100.** For those students who commence the study of law in:

1. August or September and who file a Registrant Bar Application by the following January 15;

2. January or February and who file a Registrant Bar Application by the following June 15;

3. May or June and who file a Registrant Bar Application by the following October 15.

**b. $350.** For those students who commence the study of law in:

1. August or September and who file a Registrant Bar Application by the following March 15;

2. January or February and who file a Registrant Bar Application by the following August 15; or

3. May or June and who file a Registrant Bar Application by the following December 15.

**2-23.2 Student Applicant Fee.** Applicants who did not file the Registrant Bar Application with the board as law students and who have not been admitted to the bar in any jurisdiction for a period in excess of 12 months, excluding time spent in military service of the United States, must file with the Bar Application the fee of $1,000.

**2-23.3 Supplement to Registrant Bar Application Fee.** Applicants who filed the Registrant Bar Application with the board as law students and who have not been admitted to the bar in any jurisdiction for a period in excess of 12 months, excluding time spent in military service of the United States, must file with the Supplement to Registrant Bar Application the applicable fee as follows:

**a. Less than 5 years.** If the Supplement to Registrant Bar Application is filed within 5 years of the filing date of the original Registrant Bar Application, the fee is $600.

**b. More than 5 years.** If the Supplement to Registrant Bar Application is filed more than 5 years after the filing of the original Registrant Bar Application, the fee is $1,000 as set forth in rule 2-23.2, less any fee previously paid.

**2-23.4 Attorney Fee.** Applicants who have been admitted to the bar in any jurisdiction for a period in excess of 12 months, excluding time spent in military service of the United States, must file with the Bar Application a fee based on the number of years the applicant has been admitted in another jurisdiction as follows:

**a. Less than 5 years.** If the applicant has been admitted in another jurisdiction for more than 1 year but less than 5 years, the fee is $1,600.

**b. 5 or more but less then than 10 years.** If the applicant has been admitted in another jurisdiction for 5 years or more but less than 10 years, the fee is $2,000.

**c. 10 or more but less than 15 years.** If the applicant has been admitted in another jurisdiction for 10 years or more but less than 15 years, the fee is $2,400.

**d. 15 or more years.** If the applicant has been admitted in another jurisdiction for 15 or more years, the fee is $3,000.

**2-23.5 Fee Determination.** The fee for an admitted attorney is determined by the date of the filing of the Bar Application and the status of the applicant on that date as it relates to his or her admission to the bar of any foreign jurisdiction or United States military service.

**2-23.6 Disbarred Attorney Fee.** Applicants applying for admission after disbarment or resignation pending disciplinary proceedings in Florida or in any other jurisdiction must file with the Bar Application the fee of $6,000.

**2-23.7 Military Spouse Fee.** Applicants submitting an application under the Rules Regulating The Florida Bar for authorization to practice law in Florida as military spouses while their spouse is stationed within this jurisdiction must file with the Bar Application the fee of $1,000.

Military spouses applying for full admission to The Florida Bar and not relying on the rules regarding authorization to practice law in Florida as a military spouse under the Rules Regulating The Florida Bar will be required to pay the appropriate fee under rules 2-23.2 or 2-23.4, whichever is applicable.

**2-28 Application Fee for Reapplication for Admission Based on Rehabilitation.** Applicants or registrants who are reapplying for admission and asserting rehabilitation from prior conduct that resulted in a denial of admission through Findings of Fact and Conclusions of Law or Consent Judgment must file with the application a fee of $2,200.

**2-29 Stale File Fee.** An applicant whose Bar Application has been on file for more than 3 years is required to file a new Bar Application on the form available on the board's website with current references, submission of fingerprints in the format required by the board, any supplemental documents that the board may reasonably require, and the applicable fee.

**a. If within 5 Years.** If filed within 5 years of the filing date of the last application filed, a fee of $525 is applicable.

**b. If more than 5 Years.** If filed more than 5 years after the filing date of the last application filed, the full application fee under rules 2-23.2 , 2-23.4, or 2-23.6 above is applicable.

**2-30 Petitions Relating to Administrative Rulings.**

**2-30.1 Filed with the Board.** Any applicant or registrant who is dissatisfied with an administrative decision of the board that does not concern character and fitness matters may petition the board for reconsideration of the decision. Applicants also may petition the board for a suspension or waiver of any bar admission rule or regulation. A petition seeking a suspension or waiver of a rule or seeking review of an administrative decision not related to a character and fitness recommendation may be presented in the form of a letter, must be filed with the board within 60 days after receipt of written notice of the board's action complained of, and must be filed with a fee of $75.

**2-30.2 Filed with the Court.** Any applicant or registrant who is dissatisfied with an administrative decision of the board that does not concern character and fitness matters may, within 60 days after receipt of written notice of that decision, file a petition with the Supreme Court of Florida for review of the action. If not inconsistent with these rules, the Florida Rules of Appellate Procedure are applicable to all proceedings filed in the Supreme Court of Florida. A copy of the petition must be served on the executive director of the board. The applicant seeking review must serve an initial brief within 30 days of the filing of the petition. The board will have 30 days to serve an answer brief after the service of the applicant's initial brief. The applicant may serve a reply brief within 30 days after the service of the answer brief.